BENJAMIN F. SMITH, ALEXANDER THOMPSON, and WILLIAM H. COOPER, by their next friend, Benjamin F. Smith, Plaintiffs in Error, *v.* JOB A. RACE, Defendant in Error.

### ERROR TO MACON.

On an application by a guardian for license to sell the real estate of his wards, they need not be made parties to the proceedings, nor is the appointment of a guardian *ad litem* required.

The ruling in the case of *Mason* v. *Wait*, 4th Scammon, 127, adhered to.

The case *In re Sturms*, 25th Illinois, p. 390, examined and partially approved.

THIS was an action of ejectment by plaintiffs in error, against defendant in error; plaintiffs claiming the south-west quarter of the south-west quarter of Section 35, Town 17 north,

Range 2 east of the third principal meridian, in Macon county, in fee simple.

Plea of general issue filed.

Trial by court, at July term, 1861, EMERSON, Judge, presiding. Judgment for defendant for costs on thirteenth day of said term.

Motion by plaintiffs to reinstate case upon docket, allowed by court upon payment of costs.

Cause reinstated, with leave to amend declaration.

Amended with additional count by Benjamin F. Smith and Alexander Thompson, claiming undivided three-fourths of land described in first count in fee simple.

Also, additional count by Alexander Thompson, claiming undivided one-fourth of land described in first count in fee simple.

Trial by the court, November term, 1861; issue found for defendant, on first and second counts, and for plaintiffs on third count.

Judgment for plaintiffs for one-sixth of premises described in declaration, and costs.

Motion by plaintiffs for new trial. Motion overruled.

It was admitted in evidence by the parties, that John E. French entered the land in controversy. That defendant Race was in possession of the same, as tenant of Alonzo Lapham's heirs. That the heirs of said French commenced an action of ejectment for the recovery of said land, in March, 1860, which suit was dismissed before the commencement of this suit.

Graham states, that John E. French died about the second of February, 1841; that the names of his children were Eliza Ann, Mary J., Marena Ellen, and Sarah M. French. That his wife was named Marena A. French. That she afterwards married Daniel Sturms, and died in 1850.

That Eliza A. French was born December 24, 1835; Mary J. was born February 14, 1837; Marena Ellen was born March 4, 1840; and Sarah M. was born July 23, 1841.

That Marena Ellen French died about June 4, 1854; Eliza A. Cooper, formerly Eliza A. French, died about June 9, 1857; and Sarah M. Thompson, formerly Sarah M. French, died July 6, 1860.

That Eliza A. married John Cooper, and died leaving only one child, William H. Cooper, who is now living. Mary J. French married Moses Reed, and is still living; and that Sarah M. French married Alexander Thompson, and died without issue; and that it was the best impression of witness that the heirs of John E. French resided in Indiana, in 1846 and 1847.

Plaintiffs introduced deed from Mary Jane and Moses Reed, to Benjamin F. Smith, for land in controversy.

Defendants introduced notice of intended application, by Daniel and Marena Sturms, to Macon Circuit Court, for power to sell and convey the lands of John E. French's heirs, including land in controversy.

Defendants introduced in evidence, a petition by Daniel and Marena Sturms, to Macon Circuit Court, October term, 1846, for power to sell and convey the lands of the heirs of John E.. French, and invest the proceeds in other real estate.

Defendants introduced a decree of Macon Circuit Court, October term, 1846, in the matter of Daniel and Marena Sturms, guardians, etc., which recites, that notice of the intended application of petitioners had been regularly given, etc., in said county, and no person appearing to interpose any objections, it was ordered that petitioners sell the land in controversy among others, and invest proceeds in other real estate.

Defendants introduced an amended decree of said court in same case, made at June term, 1847, extending time of sale to September 13, 1847. Also, notice of the time, place and terms of sale of land by Daniel and Marena Sturms.

Defendants introduced a report of Daniel and Marena Sturms, to Macon County Court, October term, 1847, including sale of land in controversy to Alonzo Lapham. Report indorsed approved by the court.

Defendants introduced a deed from Daniel Sturms and Marena Sturms, guardians of Eliza Ann, Mary Jane, Marena Ellen, and Sarah M. French, of the county of Vermillion, Illinois, to Alonzo Lapham, of the county of Macon, Illinois, for the land in controversy.

Said deed recites the decree and amended decree of Macon Circuit Court, in the matter of the petition of Daniel and Marena Sturms, guardians of the minor heirs of John E. French, deceased, for an order to sell and convey lands.

Defendants offered tax receipt for the year 1853, to Margaret Lapham, for taxes on land in controversy. Also, tax receipts to William S. Crissey, guardian of A. Lapham's heirs, for 1854, 1855, 1856, 1857, 1858, and 1859. Also, certificate of redemption from sale for taxes of 1860.

Plaintiff objected to the introduction of all the foregoing evidence on part of defendants. Court overruled objection.

*William S. Crissey*, a witness for defendants, testified, that Alonzo Lapham was in actual possession of land in controversy, as early as 1848; that Lapham built a barn and fence

on said land, and that he, his heirs and their tenants, had been in possession ever since.

Witness also stated, that he had paid taxes on said land for several years since 1848 ; that he was guardian for the heirs of Alonzo Lapham, and paid the taxes for said heirs. That Lapham died intestate, and that Margaret Lapham was his widow. Witness further stated, that he had paid the taxes on said land for four or five years since Lapham's death, and that Lapham died in 1851 or 1852.

Errors assigned :

The court erred in admitting in evidence the petition in the matter of Daniel and Marena Sturms, guardians, etc.

The court erred in admitting in evidence the decrees in the matter of Daniel and Marena Sturms, guardians, etc.

The court erred in admitting in evidence the report of Daniel and Marena Sturms.

The court erred in admitting in evidence the deed from Daniel and Marena Sturms to Alonzo Lapham.

The court erred in rendering judgment for the defendant on the first and second counts in the declaration.

The court erred in admitting in evidence the tax receipts, and certificate of redemption from tax sale.

The court erred in rendering judgment against plaintiff, on the first and second counts in the declaration.

The court erred in overruling motion for a new trial.

A. B. Bunn, and B. F. Smith, for Plaintiffs in Error.

J. S. Post, and Tupper & Nelson, for Defendant in Error.

Walker, J.\* Was the decree under which defendant derives his title void ? If so, then his title must fail, as the guardian's deed to defendant's ancestor passed no title, to the premises in controversy. The only defect urged, as apparent on the face of that deed is, that the cause was not entitled as against the heirs of French, in their several names. In other words, the heirs were not made defendants to the petition of the guardian, for license to sell this real estate. It contains no prayer that they be made defendants, or that process may issue against them.

Our statute does not, in this proceeding, require the minor to be made a defendant, or the appointment of a guardian *ad litem*. The tenth section of the chapter entitled "Guardian

---

\* Note.—See the case of *Gibson* v. *Roll*, in this volume.

and Ward," provides that "the Circuit Court may, for just and reasonable cause, being satisfied that the guardian has faithfully applied all the personal estate, order the sale of the real estate of the ward, on application of the guardian, by petition in writing, stating the facts, and having given notice to all persons concerned, of the intended application," etc. Another portion of the same section provides, that the order of the court may direct the sale for the support and education of the ward, or to invest the proceeds in other real estate. In this enactment there is no requirement, that the wards shall be made parties to the proceeding. But the sale is authorized on the application of the guardian, by petition, after having given the notice in the mode prescribed.

Then without making the wards, either petitioners or defendants, does the court acquire jurisdiction of the person? If so, the court may, after acquiring jurisdiction of the subject matter, determine whether the relief sought should be granted. Until jurisdiction of the proper parties, and of the subject matter is obtained, the court has no power to proceed in the cause, and an order so rendered would be inoperative and void. Whilst it is usual to make parties, whose interests are to be affected by the litigation, either plaintiffs or defendants on the record, yet no reason is perceived why the legislature may not have authority to enable parties laboring under legal disabilities, to act in their own name or in the name of others, entrusted by law with the management and control of their property. In this class of cases, the guardian is authorized, in his own name, to institute and conduct this proceeding for the benefit of the minor.

In the case of *Mason* v. *Wait,* 4 Scam. 127, it is held, in a proceeding of this kind, that "it is not necessary, that the ward should have a day in court. The proceeding was not adverse to her interest, nor against her. It is her own application, by her legally constituted guardian. No summons to her was necessary; nor could she have any day, or guardian *ad litem* in court, unless upon suggestion, as *amicus curia,* it should appear, that the guardian was about to abuse the trust, or was seeking power to injure and misapply the estate. I think it altogether an erroneous view of such cases, to regard them as proceedings against the heir, to divest her of her interest or property. It is an application by her, or on her behalf, for power to do acts for her benefit and interest." This decision has doubtless been regarded and acted upon, by the courts and by the legal profession of the State, ever since its announcement, as the correct practice. And under that prac-

tice, large amounts of property have been purchased and sold, in perfect good faith, believing that this court had definitively determined such a practice to be legal and binding, upon the estate of the minor. On the faith of that opinion, covenants for title have no doubt been entered into, under the belief, by grantors, that they were acting with perfect safety.

The stability of titles, to real property, requires that judical decisions affecting them should change as seldom as possible, and then only when a necessity almost imperative demands it. Whilst it may be true that cases of great injustice may have occurred under this practice, by unfaithful guardians, in procuring license to sell the real estate of their wards, still rather than endanger all the titles acquired since the decision of *Mason* v. *Wait* was announced, we regard it better to leave the practice as it now stands, trusting to the Circuit Courts and the friends of the minor to guard and protect his interest. We therefore feel disinclined to disturb that decision.

We are aware that the views here expressed are not in accordance with those announced in the case *In re Sturms,* 25 Ill. 390. In that case, it was improperly said, that the minors were not parties to the original suit, and their interest could not be affected by the sale of their land by the guardians. In that we went too far, according to the case of *Mason* v. *Wait;* but we still adhere to what was there said, when we held their remedy was by original bill or by an action of ejectment. If the decree was obtained by fraud, and the purchaser was a party to it, or chargeable with notice, the heir may impeach the decree by original bill, or if the adjudication was had without jurisdiction of the person or property, the remedy is by a recovery in ejectment.

Then was the decree on the application of the guardian, regular and binding? It is insisted that it was not, because the proceeding was had in the Macon Circuit Court, when the heirs resided in Vermillion county. The tenth section of the act, requires the application to be made in the county in which the minors shall reside, unless the ward is not a resident of the State, when such application shall be made to the Circuit Court of the county in which the whole or a part of the estate is situated. Graham testifies, that it is his "best impression that the heirs of French resided in Indiana in the years 1846 and 1847." Although this evidence is not of the most positive character, yet in the absence of rebutting evidence, we regard it as sufficient to establish the fact. It is in effect the same as if he had said it was his best recollection, or memory of the matter. We therefore conclude, that Indiana was the

place of the residence of the minors, when the application was made, and that Macon county was the proper county to institute the proceeding.

The petition, upon which that application was based, seems to have contained all the allegations necessary to give the court jurisdiction. It was accompanied by a sufficient notice, which was proved to have been given for the length of time, and in the mode prescribed by the statute. The original, and further decree, were regular on their face, and fixed the time, the place and the terms of the sale. The guardian's report of the sale was duly approved by the court, as required by the statute. The guardian's deed is in proper form, and no want of jurisdiction or error appears on the face of that proceeding. It must, therefore, be held that the title of the heirs to this real estate passed to the purchaser, at the guardian's sale. And the defendants in this suit, deriving and holding their title from the grantee of the guardian, were entitled to judgment in bar of the action. This view of the case renders it unnecessary to consider the question whether the action was barred, by the statute of limitations. The decree and sale under it divested the heirs of French of all title in the premises, and that is decisive of the case. The judgment of the court below is affirmed.

*Judgment affirmed.*