DECKER et al. v. MYLES.

1. A notice to lien claimants published three times in three successive weeks in a weekly newspaper, although less than twenty-one days intervened between the date of the first publication and the time other lien claim ants were therein notified to appear, *held*, a sufficient compliance with the statute (Laws 1872, p. 152).

2. Summons in proceedings under the Mechanic's Lien Law is to be served and returned as in chancery proceedings, and the defendants proper are the owners of the property to be charged.

*Appeal from District Court of Boulder County.*

MYLES, the appellee, filed his complaint in the district court of Boulder county on the 31st day of January, 1878 averring substantially :

That on April 3, A. D. 1877, and for two years previous, the Victoria Mining Company was the owner of the Victoria mine, Gold Hill mining district, Boulder county, afore-said.

That said company became indebted to one Rogers and others, for work done, etc., on said lode, commencing March 1, A. D. 1876, ending June 1, 1876 ; that June 2, A. D. 1876, said Rogers filed in the office of the clerk, etc., of said county, notice of intention to claim and hold a lien on said Victoria lode, for work done by himself and others who had duly assigned their claims to him.

That November 21, 1876, said Rogers for himself and as assignee, etc., filed in Boulder county court, his petition to enforce and foreclose the lien claimed by him on said Victoria lode ; that said Rogers "caused to be published in the Boulder *Banner*, a weekly paper published in Boulder, Boulder county and State of Colorado, a notice to all parties holding or claiming liens upon said property, notifying them that he had filed his petition for the purpose of enforcing his said lien, and that they should appear at said county court on the 11th day of December, A. D. 1876, and exhibit proof of their said liens;" which said notice was published three weeks, the first insertion being on the 23d

day of November, and the last insertion being on the 7th of December, A. D. 1876.

That January 2, A. D. 1877, no others appearing, the county court granted a decree upon said petition, against the said Victoria Mining Company and said lode, that said Rogers have a lien upon the said lode, for the sum of $1,399.15, with interest, etc., to be paid in ninety days ; in default whereof, the master to sell the lode at auction and pay said decree.

That E. J. Morath was appointed a special master to execute said decree ; that no part of said amount was at any time paid.

That said Morath thereupon exposed the premises to sale ; that Charles G. Buckingham became the purchaser; that the sale was reported and confirmed ; that April 11, 1877, the master conveyed the premises in pursuance of the sale to Buckingham ; Buckingham conveyed to Neikirk; that on August 14, 1877, said Neikirk " executed and delivered to Albert Myles a warranty deed of said premises."

That on December 8, 1876, George W. Tifts et al. alleging themselves to be partners, etc., filed in Boulder district court their petition against said Victoria Mining Company of Colorado, in and by which they prayed the said court to decree a lien on said Victoria lode, and against said Victoria Mining Company, for a balance alleged to be due for material furnished by them to said company and used upon said lode, and which said materials were alleged to have been furnished May 10, A. D. 1876 ; that October 1, A. D. 1877, such proceedings were had, that a decree was by said court granted, that said G. W. T. et al. should have a lien upon said Victoria mine for $1,239.20, with interest from May 10, 1876, to be paid within ninety days, in default, James W. Decker, referee, should sell said premises or so much thereof as might be necessary to pay the amount, and upon said sale, etc.

That by virtue of said decree, said Decker has advertised the said Victoria lode for sale on the 2d day of February,

A. D. 1878, at 2 o'clock, P. M. (Notice set. out.) That the premises so advertised are the same so sold by Morath and which have become the property of plaintiff; that said Victoria Mining Company has not since said 3d day of April, A. D. 1877, had any right in said premises; that plaintiff is the absolute owner; that the purchaser at said sale will obtain no title; that said sale, if made, will becloud the title of plaintiff to said premises; that said sale is designed to compel plaintiff to compromise the claim of said Tifts, Sons & Co.

Prayer for injunction and general relief. The defendants demurred and moved to dissolve the injunction which had been issued. The demurrer and motion were overruled, and the defendants appealed.

The only questions raised by the appellants in this court are stated in the opinion.

Messrs. WELLS, SMITH & MACON, for appellants.

Mr. PLATT ROGERS, for appellee.

STONE, J. Two questions are raised by appellants: 1st. Whether the notice to other lien claimants was published in compliance with the statute; and 2d. Whether lien claimants not made parties and served with process are affected by the decree. The 9th section of the lien law. of 1872 (Sess. Laws, p. 152), under which the proceedings were had, requires that "the plaintiff shall cause a notice to be published at least once a week for three consecutive weeks in some newspaper published in the county, if there be one, and if not, then by posting the same in the three most public places in the county, notifying all persons holding or claiming liens under the provisions of this act on said premises, to be and appear in said court on a day specified therein, and during a regular term of said court, and to exhibit then and there the proofs of their said liens."

The lien claimant, from whom the appellee derived title under the decree, caused such a notice to be published three times in three consecutive weeks in a weekly paper,

although less than twenty-one days intervened between the date of the first publication and the time the other lien claimants were therein notified to appear, and the question is presented, whether this was a sufficient notice under the statute above quoted.

An examination of all the authorities we have been able to find, bearing upon this and similar cases, shows some contrariety of decisions by the courts of different States; much of this apparent conflict, however, is due to the construction put upon the precise language of different statutes.

The case most in point against the sufficiency of this notice is that of *Shipley* v. *Mitchell*, 7 Blackf. 473, where under a statute requiring publication "for three successive weeks" before, etc., it was held that, while the language admitted of two constructions, the court was inclined to adopt that which required three full weeks to intervene between the date of the first publication and the time named. In a Pennsylvania case, where a notice was required to be given to a board of commissioners "three weeks before the time of meeting," the court say : "The order was not for notice during the three successive weeks, nor by a given number of insertions in newspapers in successive weeks, but it required a certain duration of time before the time of meeting," and, therefore, it was held that "three full weeks' notice" was necessary. *In re North Whitehall Township*, 47 Penn. St. 160.

In the case of *Mitchell* v. *Woodson*, 37 Miss. 573, it was held that where the notice was required to be "published weekly for one month," a full calendar month was intended and must be covered by the period of publication, dating from the first. The question in that case seemed to be merely whether a calendar or lunar month was intended, and hence is scarcely in point. The case of *Early* v. *Doe*, 16 How. 615, which is strongly relied on by counsel for appellant, is upon a statute requiring publication in some newspaper "once in each week, for at least twelve

successive weeks." The court held that eighty-four days, the full period of twelve weeks, must intervene between the first publication and the day of sale, in order to give full force and effect to the language of the statute. It is to be observed that the words "at least" are so placed in the sentence as to qualify the number of weeks, and not the number of publications in each week, as is the case in our statute; and in construing this so as to give meaning to the precise language employed, the court say: "We do not doubt if the statute had been 'once in each week for twelve successive weeks' a previous notice of the particular day of sale having been given to the owner of the property, that it might very well be concluded that twelve notices in different successive weeks, though the last insertion was on the day of sale, was sufficient. But where the legislature has used the words 'for at least twelve successive weeks' we cannot doubt that the words 'at least,' as they would do in common parlance, mean a duration of the time that there is in twelve successive weeks or eighty-four days. Every statute must be construed from the words in it, and that construction preferred which gives to all of them an operative meaning." Besides these cases which are cited as sustaining the construction claimed by appellants, there are three cases, which we have not been able to consult, decided by some of the district courts of Pennsylvania, cited as sustaining the same view, by Mr. Freeman, in his work on Executions, wherein he states rather broadly, and with less than his usual care, we think, that "a majority of the cases upon this subject, * * * shows that the statute requiring notice for three weeks cannot be satisfied by a publication for less than twenty-one days." On the contrary a different construction is put upon such statute by the highest courts of the States of Illinois, New York, Massachusetts, and Maine. In *Garrett* v. *Moss*, 20 Ill. 554, a sale was held valid, made under a decree which required notice of the sale to be advertised in a certain newspaper "for three weeks success-

ively," although less than twenty-one days intervened between the date of the first publication and the day of sale. In *Pearson* v. *Bradley*, 48 Ill. 250, the same construction is put upon a statute requiring the notice to be published "for three successive weeks, once each week," and while the court say that the statute may receive either construction, they further observe that " the legislature, if it had intended to require merely an insertion in three different weekly issues of a newspaper, prior to the day of sale, would naturally have used precisely the language they did use, while if they had intended the first publication should be three full weeks before the sale, they would probably have employed terms more explicit and unmistakable. In *Andrews* v. *The People*, 84 Ill. 34, where the notice was to be published " three times for three successive weeks," the court, following the decision in *Pearson* v. *Bradley*, *supra*, say : " It is true, three full weeks did not elapse between the dates of the first and last insertion, nor does the reading of the statute require that it should. The publication was made more than three times, and for three successive weeks ;   *

*   *   we are inclined to hold the notice given a substantial compliance with the statutes." In *Frothing-ham* v. *March*, 1 Mass. 253, the notification was required to be " printed three weeks successively," which was to be deemed equivalent to giving " thirty days' public notice by posting up notification of such sale." The court say : " If the law required that all or any of the publications should be thirty days previous to the sale, the defendant has broken his covenant, otherwise not.   *   *   In this case

*   *   the notification was printed three weeks successively.   *   *   The defendant then has brought his case within the express words of the statute, and as it appears to me it is within the *sense*, the plain and obvious meaning of the words.; nor can I conceive any reason for giving them any other construction than that which arises from the common and obvious import of the words used in the act." The foregoing is quoted from the opinion of

SEDGEWICK, J.  Separate concurring opinions upon the same point were rendered by THACHER and SEWELL, JJ. In the case of *Dexter* v. *Shepard*, 117 Mass. 480, the sale of premises was to be "by public auction, first publishing a notice of the time and place of sale, *once each week for three successive weeks,* in one or more newspapers," etc. The court say : "The notice of the time and place of sale was given in exact conformity to the terms of the power. There is nothing in the mortgage that requires the first advertisement to be published three weeks before the time appointed for the sale.  This point is fully disposed of by the decision in the case of *Frothingham* v. *March*, 1 Mass." The cases of *Bachelor* v. *Bachelor*, 1 Mass. 256, and *Cass* v. *Bellows*, 31 N. H. 501, cited by counsel for appellee, are upon a different question, and not in point in this case.

In *Sweet* v. *Sprague*, 55 Me. 190, the publication was required "three weeks successively." The publications were made on the 15th, 22d and 29th days of the month, and the sale was advertised for the 30th of the same month. Although but fifteen days thus intervened between the first publication and the day of sale, the court holds that the statute was complied with.  In New York this precise question was decided by the supreme court in the case of *Sheldon* v. *Wright*, 7 Barb. 40 (overruling an adverse anonymous opinion in 1 Wend. 90), which decision was afterward affirmed by the court of appeals, reported in 5 N. Y. 497.

Another case directly in point is that of *Olcott* v. *Robinson*, 21 N. Y. 150, wherein the court of appeals overrule the previous adverse decision of the same case in the supreme court reported in 20 Barb. 148.  The statute required the notice to be "advertised previously for six weeks successively."  The notice was published six times and in six successive weeks, although but thirty-eight days intervened between the first publication and the day of sale, and upon a review of the cases the court say : "It would seem, therefore, that the weight of authority preponderates decidedly in favor of holding that the publication of the notice, in the

present case, was sufficient." To the same effect is the case of *Chamberlain* v. *Dempsey*, 22 How. Pr. 357, where the publication was required "for three weeks immediately previous to the time of sale, at least twice in each week." A still later case sustaining the same rule of construction, decided by the court of appeals, is that of *Wood* v. *More-house*, 45 N. Y. 375.

From a review of all the cases cited by counsel on both sides of this case, and all the other cases we have been able to find that bear upon the question, we are satisfied that while the statute in the present case will bear either of the two different constructions contended for, the one acted upon in this case seems to be the most obvious and is supported by the weight of authority. Had the legislature intended that the first publication of such notice should be three full weeks or twenty-one days previous to the time designated therein, nothing could have been easier than to have so expressed it.

One of the statutes enacted by the first legislative assembly of the Territory of Colorado, providing for service as to non-resident defendants, by publication, was in the following language, than which nothing could be more unmistakable in meaning: "Such publication to be made for four successive weeks, the first of which shall be at least thirty days before the return day of the summons." Acts of 1861, p. 183. This mode of service was also applied to proceedings to enforce our first Mechanics' Lien Law. Id., p. 260, § 10.

That the present statute omits to distinctly express that the first publication shall be a given number of days before the time named, tends to strengthen the conviction that a different meaning was intended. Another consideration that should have some weight is that, undoubtedly, titles have passed throughout the State upon notices published as was that in the present case, and their disturbance should be avoided if consistent with a rightful construction of the act in question. That the mode of publication pursued in

this case was witihn the meaning of the statute, we think is supported by reason and authority.

The other question raised by appellants is, we think, settled by the statute itself.

Section 2 of the Mechanics' Lien Act provides the mode of giving notice by lien claimants of their intention to hold and claim a lien, by filing a statement for record with the county clerk and recorder, and declares that "from the time of such filing all persons shall be deemed to have notice thereof." Section 9 of the act provides the manner of enforcing the lien by action in the proper court.

Summons is to be served and returned as in chancery proceedings. The defendants proper, and who are to be thus served, we understand to be the owners of the property sought to be charged. Then follows the direction for publication of the notice in the newspaper or by posting, "notifying all persons holding or claiming liens under the provisions of this act, on said premises, to be and appear in said court on a day specified therein, and during a regular term of said court, and to exhibit then and there the proof of their said liens. * * * Judgment shall be rendered according to the rights of the parties, and all liens not so exhibited and proved shall be deemed to be waived in favor of those which are so exhibited."

Here, then, is the statutory mode of giving notice to other lien claimants; first, of the intention to claim a lien by filing the statement; and, second, of the time and place of enforcing the same by the publication aforesaid. Upon compliance with these statutory requirements, by the party enforcing the lien, the other lien claimants are concluded. Phillips on Mechanics' Liens, §§ 341, 401.

The judgment of the district court must be

*Affirmed.*