ORMAN ET AL., PLAINTIFFS IN ERROR, v. BOWLES ET AL., DEFENDANTS IN ERROR.

| 18 | 463 |
| 19a | 393 |
| 18 | 433 |
| 38 | 470 |
| 38 | 471 |
| 38 | 472 |
| h38 | 475 |
| 38 | 478 |

1. GUARDIAN AND WARD—POWER TO SELL REAL ESTATE.
The power to sell real estate of a minor is statutory, and a substantial compliance with the requirements of the statute is necessary to divest the minor of his title. And this must be affirmatively shown by the record.

2. SAME—PETITION TO SELL REAL ESTATE.
Under the statute (Gen. stats. 1883, sec. 1594) a showing that the guardian has " faithfully applied all the personal estate " is a necessary condition precedent to the sale of the ward's real estate to pay debts, but is not in an application to sell unproductive real estate for the purpose of reinvestment, and no allegation of that fact is necessary.

3. GUARDIAN AD LITEM, WHEN REQUIRED.
The appointment of guardian ad litem is only required in cases wherein the proceedings to sell infant's estate were either adverse to his interest, or had under statute making the appointment of such guardian a requisite to the validity of the sale.

4. SALE OF REAL ESTATE.
The fact that the petition for leave to sell real estate of minor described lands not included in the notice, required by statute to be published, does not affect the validity of a sale of the land properly advertised.

5. SAME.
The failure to sell all the land described in the order of sale will not vitiate the sale of a portion.

6. NOTICE, PUBLICATION OF.

Notice published in each daily issue of a newspaper for the full period of twenty days complies with the order of court requiring publication once a week for three successive weeks.

7. GUARDIAN—APPLICATION OF PROCEEDS OF SALE.

The purchaser of land properly sold by a guardian is not required to see that the proceeds of the sale are invested or accounted for by the guardian.

*Error to the District Court of Pueblo County.*

FROM the record it appears that on the 27th day of March, 1882, Joseph W. Bowles, then guardian of William B. Orman and Franklin H. Orman, minors, published a notice in the South Pueblo News, a daily newspaper printed and published at Pueblo, that at the next term of the district court sitting in and for Pueblo county to be holden on the third Monday of April, 1882, he would apply for an order to sell the following described real estate belonging to said minors, to wit:

The S. W. ¼ of the S. E. ¼, and the S. E. ¼ of the S. W. ¼ of section 27, and the N. E. ¼ of the N. W. ¼, and the N. ½ of the N. E. ¼ of section 34, Tp. 20 S. of R. 65 West, situate in Pueblo county, state of Colorado.

On the 29th day of March, 1882, he published in the same paper another notice to the effect that he would apply at the same term of court for an order to sell the following described real estate situate in the county of Pueblo and state of Colorado, to wit:

The S. ½ of the S. W. ¼, the N. W. ¼ of the S. W. ¼, the S. W. ¼ of the N. W. ¼ of section 26, Tp. 20 S. of R. 65 West, excepting a certain ten acres described by metes and bounds. Also an undivided one third interest in the N. E. ¼ of the N. E. ¼ of section 17, Tp. 20 S. of R. 65 West. Also an undivided one half interest in a part of the S. W. ¼ of section 26, Tp. 20 S. of R. 65 West, and describing the same also by metes and bounds. Also lots 9 and 10 in block 21, and lots 6, 7 and 8 in block 27 ; all in the county Addition to the City of Pueblo.

On the 16th day of April, 1882, the said Bowles, as guar-

dian of said minors, presented his petition to the district court, alleging therein, inter alia, that his wards William B. Orman and Franklin H. Orman were the owners in fee of certain real estate, describing the same as in the foregoing notices.

" That the said property yields no income, and that it is a continual source of expense, and that the above described land in sections 27 and 34, Tp. 20 S. of R. 65 West is being constantly damaged and diminished in value by the action of the Arkansas river, which river flows through said sections 27 and 34, by said river washing its banks and changing its channels. And your petitioner further submits that the interest of said wards would be promoted by the sale of the aforesaid real estate ; " and praying " that the court make an order for the sale of said real estate for the purpose of investing the proceeds in other real estate."

On April 18, 1882, a hearing was had upon this petition, and the court found the allegations therein to be true and ordered the petitioner to sell the property therein described at public vendue, to the highest and best bidder, on the 11th day of May, 1882, between the hours of 2 and 5 o'clock in the afternoon, and that such sale be advertised at least once a week for three successive weeks in a newspaper published in Pueblo county, such sale to be made for one third cash, and the balance unpaid to be secured by trust deed on so much of the property sold as should afford ample security for deferred payments with ten per cent interest.

Afterwards and on the 11th day of July, 1882, said guardian filed a report of his proceedings under and in pursuance of such order of sale, from which it appears that he published notice of the time and place of sale in a daily newspaper printed and published in Pueblo county, commencing on April 21, 1882, and continuing in each successive issue thereof up to and including May 11, 1882.

That on the 11th day of May, 1882, at the place designated in the order, he offered at public vendue the following tracts of land, to wit:

VOL. XVIII—30

The S. E. ¼ of the S. W., ¼. and the S. W. ¼ of the S. E. ¼ of section 27, Tp. 20 S. of R. 65 West, and the N. ½ of the N. E. ¼, and the N. E. ¼ of the N. W. ¼ of section 34, Tp. 20 S. of R. 65 West, and sold the same to Hiram Morey for the sum of $3,680, he being the highest bidder, who paid $1,500 cash and executed his two promissory notes for the balance of the purchase price, each for the sum of $1,090, payable in one and two years respectively after date, with interest at the rate of ten per cent per annum until paid, and secured the same by a trust deed on the land sold, except fourteen acres thereof.

On April 27, 1882, the court entered an order vacating the order of sale as to all property except that sold as above stated.

On the 11th day of July, 1882, the court approved and confirmed such sale, and ordered a deed delivered to the purchaser.   The plaintiffs in error seek to reverse this judgment of confirmation and declare the sale null and void.

Messrs. BROWNE, PUTNAM & PRESTON, and Messrs. WALDRON & DEVINE, for plaintiffs in error.

Mr. CHAS. E. GAST and Mr. HENRY A. DUBBS, for defendants in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The principal assignment of error is predicated upon the alleged insufficiency of the petition presented by the guardian to invoke the jurisdiction of the court; and for that reason the proceedings were *coram non judice* and void.

The power to sell the real estate of a minor is statutory, and a substantial compliance with the requirements of the statute is necessary to divest the minor of his title, and this must be affirmatively shown by the record.   The statute providing for the sale, by the guardian, of his ward's real estate, in force at the time these proceedings were had, is as follows:

" The district court may, for just and reasonable cause, being satisfied that the guardian has faithfully applied all the personal estate, order the sale of the real estate of the ward, on the application of the guardian by petition in writing stating the facts, and having given notice to all persons concerned of such intended application, in some public newspaper printed in the state, or by setting up written ·notices in three of the most public places in the county, at least three weeks before the sitting of the court; such order may enable the guardian to sell and convey the real estate for the support and education of the ward, or to invest the proceeds in other real estate. The court, in such order, shall direct the time and place of sale, the notice thereof to be given, and may direct the sale to be made on reasonable credit, and require such security from the guardian and purchaser as the interest of the ward may require. It shall be the duty of the guardian making such sale, as soon as may be, to make return of such proceedings to the court granting the order, which, if approved by the court, shall be recorded, and shall vest in the purchasers all the interest the ward had in the estate so sold ; application for the sale of such real estate shall be made to the court of the county where the whole or part of the estate shall be situated." Gen. Stat. 1883, § 1594, p. 527.

Appellants insist that by the terms of this section it is made a condition precedent to the exercise of the power to sell the ward's real estate for any purpose, that the guardian has " faithfully applied all the personal estate," and, notwithstanding this proceeding was for the purpose of reinvesting the proceeds of unproductive property, that the omission of such allegation from the petition for the order of sale is fatal to the jurisdiction of the court and invalidates the entire proceeding.

The section of our statute above cited was borrowed from Illinois, and adopted by the then territory of Colorado in 1861. It had at that time received a construction, by the supreme court of that state, upon the point raised by ap-

pellants. In the case of *Young et al. v. Lorain et al.*, 11 Ill. 624, Caton, J., delivering the opinion of the court, says:

" The statute sets out with authorizing the court, ' for just and reasonable cause, being satisfied that the guardian has faithfully applied all the personal estate,' to order the real estate to be sold ; and in a subsequent part of the section, it provides that the sale may be ordered for either of two purposes : first, for the support and education of the ward, and, second, that the proceeds of the sale may be invested in other real estate. Now, by the literal expressions of the act, it might seem that the personal estate must be exhausted before a sale could be ordered, where the sole object was to invest the proceeds in other real estate, but we can hardly believe that such could have been the design of the legislature, for, certainly, the existence of personal estate could have nothing to do in determining the question whether the interest of the ward would be promoted by a change of the investment in real estate. It would seem to be more reasonable to suppose that the ' just and reasonable cause,' which is required to be shown, and the facts which the statute requires to be stated in the petition, should govern the court in determining whether the interest of the ward required a change of the investment, without regard to the existence of personal estate."

Under a familiar rule, by adopting this statute we accepted this construction. That such showing is a necessary condition precedent to the sale of a ward's real estate to pay debts, we think is clear ; but we can find no authority, nor conceive of any principle that makes it so in the sale of unproductive real estate for the purpose of reinvestment.

It is clearly to the advantage of the ward that his personal estate be first used for his education and maintenance, but no reason is perceived why it would advantage him to retain real estate that is not only unproductive, but a source of expense that eventually may consume his personalty.

The contention of plaintiff in error, if sustained, would defeat the very object of the statute, which is to advance the

interests of the minor by affording the means to the guardian to make a judicious change of investment. If exhaustion of the personal estate of the ward is not a condition precedent to the sale of his real estate for the purpose of reinvestment, then no allegation of that fact is necessary in the petition. We do not understand counsel for plaintiff in error to seriously contest the sufficiency of the grounds alleged, or that they do not constitute such " just and reasonable cause " as the statute contemplates to invoke the action of the district court. And it is to be presumed that the court, in the exercise of that degree of care so imperatively demanded for the protection of the minor's interests, required full and satisfactory proof of the existence of such just and reasonable cause before granting the order of sale.

The want of averment that the guardian had faithfully applied all the personalty, in our opinion, constitutes no defect in the petition, filed as it was solely for the purpose of procuring an order of sale of unproductive real estate that was being depreciated, for the purpose of reinvestment in other and more desirable property.

The second objection presented by plaintiffs in error as affecting the validity of the sale, is the failure of the court to appoint a guardian *ad litem*. Upon an examination of the authorities cited by counsel for appellants, we find them to be cases wherein the proceedings to sell the infant's estate were either adverse to his interest, or were had under statutes making the appointment of a guardian *ad litem* a requisite to the validity of the sale. Our statute does not require such appointment, and, as in the former respect, prior to its adoption, had been construed in this particular by the supreme court of Illinois. In *Mason v. Wait et al.*, 4 Scammon, 127, it was held that in a proceeding to sell the ward's estate under this statute,

" It was not necessary that the ward should have a day in court. The proceeding was not adverse to her interest, nor against her. It is her own application, by her legally constituted guardian. She is in court by her guardian. No sum-

mons to her was necessary; nor could she have any other day or guardian *ad litem* in court, unless upon suggestion, as *amicus curiæ*, it should appear that the guardian was about to abuse the trust, or was seeking power to injure and misapply the estate. I think it altogether an erroneous view of such cases, to regard them as proceedings against the heir, to divest her of her interest or property. It is an application by her, or on her behalf, for power and authority to do acts for her benefit and interest."

In *Smith et al. v. Race*, 27 Ill. 387, the court quoted the foregoing, and say:

" This decision has doubtless been regarded and acted upon, by the courts and by the legal profession of the state, ever since its announcement, as the correct practice. And under that practice, large amounts of property have been purchased and sold in perfect good faith, believing that this court had definitively determined such a practice to be legal and binding upon the estate of the minor. On the faith of that opinion, covenants for title have no doubt been entered into, under the belief,' by grantors, that they were acting with perfect safety."

It has also been approved in several later cases. In the case of *Prine et al. v. Mapp et al.*, 80 Ga. 137, wherein it was contended that a guardian sale under a statute similar to ours was invalid because a guardian *ad litem* was not appointed, the court, after reviewing the decisions cited by counsel in this case with others, say:

" We have carefully read the authorities cited by counsel for the plaintiff in error, and find that in all the cases cited by him, in other states in which the courts held that a guardian *ad litem* was necessary, the decisions were based distinctly upon the statutes of those states."

And it was therein held that under a statute that contained no requirement to that effect, the appointment of a guardian *ad litem* was not necessary, in a proceeding by the guardian to sell the ward's real estate, to constitute a valid sale of such property as against the ward. We think the contention of

counsel for appellants on this point is without support in reason or authority.

The next point urged by counsel for appellants is that the petition was presented upon insufficient notice ; and this contention is based upon the fact that two notices of application for the order to sell were published, one describing the land sold, and the other land that was not sold, and that the latter was first published on March 29th, which was less than three weeks before the April term of court.

While this is true, it appears from an inspection of the record, that the first notice describing the land actually sold, to wit, the tracts in sections 27 and 34, was published the requisite time. There also appears of record an order of April 27th, vacating the order to sell as to the property unsold and described in the second notice.

It appearing therefore, by the record, that the notice describing the land sold was published the required length of time, the fact that the petition presented to the court included other tracts described in another notice not so published, which were not sold, does not affect the validity of the sale of the land properly advertised.

Counsel emphasize the fact that all of the land described in the petition was ordered sold, and contend that a sale of less than all was unauthorized. Even under an order of sale, valid as to all the land described therein, we apprehend that a failure from any cause to sell the entire property would not vitiate a sale of a portion, much less should a failure to sell that illegally ordered sold have such an effect. Without deciding whether the publication of the notice is essential to the jurisdiction of the court in the premises, we think, in so far as the land sold is affected by this question, the publication conformed to the requirements of the statute.

It is assigned as a further error that the notice of sale was not published as ordered by the court. In support of this assignment counsel for appellants assume that the order prescribed three weeks' notice to be first given. The order was as follows:

" Said sale shall be at public vendue, to be made at the east door of the court house of said Pueblo county, situate in the city of Pueblo, in said county, and to take place on the eleventh (11) day of May, A. D. 1882, between the hours of 2 and 5 o'clock in the afternoon, notice of the time and place of said sale having first been published at least once a week for three successive weeks in some public newspaper printed and published in said county of Pueblo."

It appears that the notice was published in the Daily Evening News, a paper published in Pueblo county, in each issue, commencing on April 21st, and including May 11th, a period of twenty days. The order was complied with, and it was not essential, as argued by counsel, that the notice should have been published for the full period of three weeks before the sale. To this effect are the decisions of this court in *Decker v. Myles*, 4 Colo. 558; *Calvert v. Calvert*, 15 Colo. 390.

The objection that no bond was required for the faithful application of the proceeds is, under the statute and the facts of the case, equally without merit. It is not claimed that the terms of the sale as prescribed in the order were not complied with; but, on the other hand, it appears that $1,500 in cash was paid, and the balance secured by trust deed.

The objection that the district court, in its order of confirmation, failed to direct the investment of the proceeds, is answered by the provisions of section 1595 of the general statutes. Thereby the guardian is required to make return to the county court of the proceeds of such sale, and is subject to the orders of that court as to their investment. This objection goes to a matter subsequent to the consummation of the sale, and is one that can in no way affect the rights of a purchaser. He is not required to see that such proceeds are properly invested, and a failure to invest them at all could not defeat a sale properly made.

Upon a careful examination of the record we are satisfied that the jurisdiction of the court below was properly invoked; and that no substantial error intervened in the subsequent proceedings. The sale in question therefore must be upheld.

                                        *Affirmed.*