No. 12,391.

TOLL *v.* McKENZIE ET AL.
(299 Pac. 14)

No. 12,392.

TOLL *v.* PECK, TRUSTEE ET AL.

Decided April 27, 1931. Rehearing denied May 18, 1931.

Mr. John H. Denison, Mr. Fred Wright, Mr. Gail L. Ireland, Mr. Chadwick J. Perry, for plaintiff in error.

Messrs. Ewing & Arnold, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error is hereinafter referred to as Toll, and defendants in error, George W. Casey as Casey, Kathryn M. McKenzie as the executrix or the guardian or Mrs. McKenzie, and Kathryn Ann McKenzie and Jeanne Ella McKenzie as the minors or the wards or the daughters. Charles D. McKenzie, the deceased husband of Mrs. McKenzie, is referred to as McKenzie.

Case No. 12,391 was a probate proceeding which Toll sought to open after it had been long closed. Therein a demurrer was sustained to his reply. He thereupon stood and brought error. Case No. 12,392 was brought by Toll to enjoin the foreclosure of a trust deed on his home. To review a judgment entered against him therein he brings error.

The property in question is lots 13 and 14, block 7, of

Fisher's Cheesman Park addition to the city of Denver. It is hereinafter designated as 820, that being the number, on Detroit street, of the residence thereon located. In 1919 the title to 820 was in one Owens. She conveyed by warranty deed to McKenzie. That deed was never recorded. McKenzie borrowed $8,000, of the purchase price of $8,200, from Casey, a close friend, and secured the loan by a trust deed which was recorded. McKenzie died October 23, 1922, after having reduced his debt to $5,000. He left a will dated in 1918, by the terms of which all his estate passed to Mrs. McKenzie, and left as his heirs his widow, and two daughters born in 1920 and 1921 respectively. Casey, examining the papers of deceased in an effort to aid the widow, found the unrecorded warranty deed and the will. Convinced that if the estate took the usual course in probate nothing would be realized for the minors, he conceived the idea of saving time, trouble and expense by getting a new warranty deed from Owens direct to Mrs. McKenzie, dated back to the time of the McKenzie purchase, and destroying the old. This was done and the new deed recorded. Casey then released to Mrs. McKenzie his trust deed and took from her, and recorded, a new one securing the unpaid balance. Thus the record title to 820 was made to appear in Mrs. McKenzie, and the minors, the real owners of an undivided one-half thereof, were eliminated. Thereupon, Mrs. McKenzie, as sole owner, entered into a contract to sell 820 to Toll for $11,000 and convey merchantable title. As per that contract Toll paid to Mrs. McKenzie the purchase price, above the Casey encumbrance, and received from her a warranty deed subject thereto. Thereafter he made a payment of interest to Casey and October 10, 1923, paid him $1,000 on principal. In a general conversation that followed Casey disclosed to Toll the former ownership of McKenzie and the clever method of its obliteration. Here for the first time Toll learned that the minors were in fact owners of an undivided one-half of 820. At this time Toll was in pos-

session of the premises and had made extensive improvements. There had been neither probate nor guardianship proceedings. Mrs. McKenzie was apparently unable to refund the purchase money and the restoration of the parties to their original status seemed impossible.

Mrs. McKenzie and Casey now entered into a new contract, hereinafter referred to as "A," whereby they agreed with Toll to probate the McKenzie will, institute guardianship proceedings for the minors, give to the court all the essential facts of the transaction, cause the interest of the minors in the property to be sold to Toll in the guardianship action (if in the judgment of the court such a sale were proper), furnish Toll the funds to purchase thereat, and pay all costs and expenses of said proceedings, including Toll's attorneys' fees. It was further therein stipulated: "The steps and proceedings described in the preceding paragraphs of this contract are not to be taken as limiting the obligations of the parties of the first part [Mrs. McKenzie and Casey], but it is understood that they are descriptive merely, and if additional steps or proceedings should be required in order to perfect the title of said Oliver W. Toll with regard to the aforesaid McKenzie interests such additional steps and proceedings are to be taken at the expense of the parties of the first part." In other words, this was a contract by which Mrs. McKenzie and Casey undertook, by appropriate court proceedings and all other necessary acts, to perfect Toll's title to 820 without expense to him. They say they did so. If they are right the judgments must be affirmed. Toll maintains they did not, and assigns certain specific reasons for his position. If he is correct the judgments must be reversed.

In pursuance of "A" the McKenzie will was probated and Mrs. McKenzie, as executrix, for good reasons set out in her application, obtained an order for the sale of 820, and reported that she had sold it to Toll subject to the encumbrance, and received the purchase price. Guardianship proceedings were instituted and Mrs. Mc-

Kenzie, having executed and filed the required bond, receipted as guardian to herself as executrix for the minors' share of the reported sale price. All these proceedings were regular on their face and in each instance the proper orders were entered by the probate court approving the action of executrix and guardian.

Nineteen months after the executrix had filed her final report and was discharged, and the day before the trial of 12,392 began in the district court, Toll filed, in the probate proceedings, a so-called "disclaimer," wherein, after reciting certain facts of the transaction and putting his construction thereon, he prayed that all the proceedings relating to the sale be set aside. The executrix answered and Toll replied. A general demurrer to that reply was sustained. We need not here detail the specific allegations of these pleadings. Suffice it to say that, taken together, they apprised the probate court of every incident, material or otherwise, of the entire transaction, and set forth the conclusions of the respective parties with reference thereto.

Toll, having protested the proceedings, rejected the deed of the executrix and declined to pay anything more to Casey. The latter began foreclosure of his security, whereupon Toll filed case No. 12,392 to stop him and obtained a temporary injunction. The complaint, amended answer, and reply therein, told the district court the same story told the probate court by the pleadings in No. 12,391. Toll urged as a defense to the foreclosure substantially the same things he urged as grounds for setting aside the alleged sale. Stripped of wholly immaterial allegations and conclusions these are: Mrs. McKenzie and Casey entered into a scheme to defraud the minors of their estate; as a result thereof they palmed off on Toll a bad title; Mrs. McKenzie warranted this merchantable, and such had been their conduct and relations that both she and Casey were bound to make it so; by "A" they agreed to do this but have violated that contract in important particulars; they did not give the

probate court the material facts; the alleged sale was made in the probate, instead of the guardianship, proceedings; they furnished Toll no money to buy at the sale; Toll did not buy because there was no sale; Mrs. McKenzie had an interest hence was prohibited from making the sale; she has received no cash as guardian; Toll has not received the merchantable title called for by his contract.

The answer to all this is: There was an intent to deceive, but no intent on the part of anyone to injure the minors, hence the fraud was, in that sense, constructive only. As such we hereinafter refer to it. Whether the title first obtained by Toll was defective, and if so whether Mrs. McKenzie and Casey weré obliged to cure the defect, is immaterial here. There was clearly a misunderstanding, a disputed question of rights and liabilities. This dispute was in absolute good faith, and in the same good faith was settled by the execution of ''A.'' While the letter of this contract has been violated, its spirit has not. It makes no difference now who gave the facts to the probate court, they were given. Beyond that what the court did was discretionary. It had all the facts while it still had discretion. With knowledge of all, it affirmed the action taken with knowledge only of a part. The presumption follows that its original action was uninfluenced by any concealment. With the exercise of its discretion Toll therefore has no concern. A valid sale in probate gives him as good title as a valid sale in guardianship. That no actual cash was handed Toll, to be by him handed to the executrix, is immaterial. He had already paid her the money belonging to the minors and when she charged herself with it as executrix the result was the same. Making useless motions would have added nothing to the transaction. The sale on paper was in all respects as valid as if accompanied by oral offer and acceptance. Toll's contract, plus the court proceedings conducted according to its terms, made Toll a purchaser as effectively as if he had attended at

a given time and place and by word of mouth accepted an offer made in the same way. Mrs. McKenzie's only "interest" was to correct an error she had committed in perfect good faith. That interest was completely revealed to the probate court while the proceedings were still under its control. Mrs. McKenzie's interest was in fact against the sale, rather than for it, because the sale resulted in taking from her money she had received and held in her individual capacity and charging it to her as guardian. Such is not the "interest" contemplated by section 5317, C. L. 1921, requiring an affidavit of "no interest, direct or indirect," in the "purchase" by the executrix making the sale. Since Toll had theretofore actually paid to Mrs. McKenzie money which belonged to the minors, which money is now charged to her in a proper guardianship proceeding in which she is bonded to account, Toll has no further concern with that matter. *Orman v. Bowles,* 18 Colo. 463, 33 Pac. 109. We think this record shows that when this transaction is closed, as hereinafter directed, Toll will have good title to all the McKenzie interests in 820, and certainly as merchantable title in every respect as if the terms of "A" had been literally complied with.

Ordinarily the foregoing would lead to the affirmance, with costs, of both judgments. But other questions require comment, and other conditions consideration.

 Toll's litigation is not without reason. He bought an apparently good title which he was justified in believing had turned out otherwise. The holder of the encumbrance was primarily responsible for the complication. He brought this about as an intruder, although a friendly one, into affairs which were none of his concern. He assumed knowledge when he had none, and acting on that assumption instigated and helped execute a constructive fraud. When apprised of all this he contracted to undo the wrong and pay the costs. Instead of complying literally with the terms of that contract he varied those terms as he saw fit, thus again casting a

doubt upon Toll's title. It does not now appear that he. has given Toll full credit for his payments, or has paid Toll's attorneys' fees, or recorded the probate proceedings showing the sale, or had Toll's abstract brought down to date, all of which by "A" he agreed to do. He says Toll has sustained no damage, hence has no cause of action; that he cannot raise the question of defective title until there is an attempted ouster; that the foreclosure of the encumbrance was not. made dependent upon compliance with "A" by the terms thereof; and that one who assumes a .mortgage as a part of the purchase price of real property is estopped to question its validity. Toll's initial position was not that he had been damaged, but that he would be unless the courts protected him. If so, he is entitled to be heard. Whatever the rule as to the necessity of ouster or attempted ouster where the mortgage is held by an innocent third party, it cannot be invoked by one in Casey's position because no man may take advantage of his own wrong. It is true that "A" makes no specific mention of the Casey encumbrance, but the implication is clear. The question of estoppel by one who assumes a mortgage held by an innocent third person is not raised by this record. Toll simply says, in effect, that inasmuch as Casey engineered this constructive fraud he can get no relief by foreclosure or otherwise, until the wrong he perpetrated is undone and those damaged are made whole. To state the proposition is to approve it.

In view of the foregoing, and the further fact that in oral argument in this court it was agreed by counsel, in response to our inquiry, that Casey was demanding nothing more than his debt with interest, it is now ordered:

That Toll pay his own costs in this court and in the county court in case No. 12,391; that all other costs therein be paid by Mrs. McKenzie individually; that as so modified that judgment is affirmed.

That Toll pay his own costs in this court and the district court in case No. 12,392; that Casey pay all other

costs therein; that on or before June 1, 1931, Toll pay to Casey the balance due on the encumbrance, with interest at six per cent per annum as therein specified, less the obligations assumed by Casey under the terms of "A" as hereinbefore recited; that thereupon Casey cause his trust deed to be released to Toll; that so modified the judgment is affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE MOORE and MR. JUSTICE ALTER concur.

### On Rehearing.

*Per Curiam.*

Case No. 12,392 is remanded to the district court with directions to effectuate the judgment as herein modified, and grant any extension in time thereby necessitated, not exceeding thirty days. Otherwise the motions for rehearing are denied.