In the matter of CONRAD HARVEY, late guardian of the heirs of ALVAH SWEET, deceased.

#### APPEAL FROM SCHUYLER.

Where the proceedings under a petition of a guardian, for the sale of the real estate of wards was regular, and in compliance with the statute, and the report of the sale was not made for seventeen years, it appearing that had the report been made soon after the sale, it would have been confirmed, the lapse of time will not prevent a present confirmation and approval of such report.

The delay in this case was not owing to any defect or bad faith in the action of the guardian, but arose from a mistake.

THE application for a confirmation of the report of the guardian in this case was heard and denied, by WALKER, Judge, at October term, 1854, of the Schuyler Circuit Court.

J. GRIMSHAW and D. A. SMITH, for Appellant.

M. McCONNEL and J. S. BAILEY, for Appellee.

CATON, J.   On the 7th day of November, 1834, Conrad Harvey, guardian of the infant heirs of Alvah Sweet, filed his petition in the circuit court of Schuyler county to sell the real estate of his wards, of which due notice was published.   At the November term, 1835, the circuit court entered an order directing the guardian to sell the real estate of the wards on the first Monday of January, 1836.   At the June term of the court, 1837, the guardian reported to the court that he had not made the sale in pursuance of the former order of the court, by reason of sick-

ness in his family, and asked a further order of the court authorizing him to make the sale on the 20th day of July, 1837, which order the court made. No report of the sale was made by the guardian till the 16th day of October, 1854, when he reported to the court that he had, on the said 20th day of July, 1837, in pursuance of the order of the court, after having given due notice of the time and place of sale, sold the said real estate to Joel Sweet for the sum of two hundred dollars, who had paid him therefor, and to whom he had made a conveyance, and asked that the report might be approved and the sale confirmed according to the requirements of the statute. A notice of this application was duly served upon the wards, who had in the meantime attained their majority, and who appeared by their counsel in the circuit court and resisted this application of the guardian, and filed several exceptions to the report. The circuit court refused to approve of the report of the guardian, which decision is now assigned for error.

The effect of the decision is to deprive the purchaser of the title which he purchased at the guardian's sale, more than seventeen years before. The reason assigned by the guardian for this delay in making this report is, that he was not advised and did not suppose that it was essential to the validity of the title of the purchaser that he should make report of the sale, and that the report should be approved by the court. It may be here remarked that until the decision of this court of the case of *Young* v. *Lorain*, 11 Ill. 624, made in 1850, it was undoubtedly the opinion of many of the profession that the title acquired at a guardian's sale was good, though no report of the sale had been made by the guardian and approved by the court. In that case we decided otherwise, which decision has been confirmed in several subsequent cases, and must now be considered as the settled law of this court.

The objections filed by the wards to the report of the guardian, are:

First, The order of sale in said cause was irregular and void, and does not show that the court had jurisdiction to hear said cause, nor the proof upon which the order was made.

Second, No place was fixed in said order of sale for the place of sale, as required by law.

Third, There is no sufficient evidence that the guardian complied with said order of sale.

Fourth, Said report is in other respects insufficient.

Fifth, The court now has no right or authority to entertain and approve of the same, because of the laches of the purchaser and of said guardian, they having failed to apply in apt time

therefor.    These objections will be considered in the order in which they are presented.

The first is a question of jurisdiction in the circuit court to enter the original order of sale.    This precise question was before the court in the case of *Young* v. *Lorain* above referred to. After alluding to the decisions on this subject, the court said: " They all agree that enough must appear, either in the application or the order, or, at least, somewhere upon the face of the proceeding, to call upon the court to proceed to act; and all agree, that when that does appear, then the court had properly acquired jurisdiction, or, in other words, is properly set to work."    It is, therefore, necessary that we examine whether such a case is alleged in the petition, or is shown in the order of the court, as required the court to investigate the case, and determine whether the proofs were such as would require an order of sale or not; for, if such a case was presented to the court, then it was called upon to act in the premises, which is the test of jurisdiction.    The statute says: " The circuit court may, for just and reasonable cause, being satisfied that the guardian has faithfully applied all the personal estate, order the sale of the real estate of a ward, on the application of the guardian by petition, in writing, stating the facts, etc."    The statements of this petition are: " Said children had no personal property left them, nor have they any personal estate now, but they have real estate in the county of Morgan worth about two hundred dollars ; and for the purpose of raising a fund to support and educate said wards, and to invest a part of the proceeds in other real estate, he prays, etc."    Now, here it will be observed, that the petition does not follow the language of the statute, which is, " that the guardian has faithfully applied the personal estate."    In *Young* v. *Lorain*, the objection was very similar to this, except that in that case, the averments of the petitioner were more equivocal than in this.    There, the averment was, that no personal estate of the wards had ever come to the hands of the guardian; which admitted the possibility that there might have been personal estate belonging to the wards which the guardian might have obtained for the support of the wards, and yet the averments were held sufficient.    In this case the averment is more comprehensive than that.    It shows that the wards " had no personal property left them, nor have they any personal estate now."    This would seem to preclude the possibility of there having been any personal estate of the wards which the guardian had neglected to render available for their support, unless we would suppose that they might have acquired personal property in some other mode than having it left them.    But even that supposition is precluded by the find-

9

ing of the court as recited in the order of sale. That order says " that there was no personal property belonging to the estate of the said Alvah Sweet, deceased, nor any provision made for the support and education of the said wards." This positively precludes the idea, that any provision had been made for the support of the wards in any way or from any source, and should be as satisfactory as the averment prescribed by the statute, that all of the personal estate belonging to the wards had been faithfully applied to their maintenance. If there was and had been no personal estate belonging to the wards, then it was impossible that the guardian could have applied any. An averment or finding, in literal compliance with the statute, could never be required with propriety, except in a case where there had been personal estate of the wards to be applied. We are satisfied that enough appears upon this record, to show that the court had jurisdiction.

The second objection is, that the order of the court did not fix the place of sale. This is a misapprehension of facts. There were two orders of the court directing the sale. The first directed the sale to be made on the first Monday of January, 1836, at the door of the court house in Jacksonville; and the second directed " that the said order heretofore granted, be renewed, and that the petitioner be authorized to sell, on the 20th day of January, 1837, and convey under said order, on his complying with the requisitions contained in said order in every particular, as though the same had not expired." The substance and effect of this last order, was merely to extend the time of sale directed to be made by the first order. That order was not revoked or vacated in any way, and the only intention of the last order was to alter one of the provisions of the first order, leaving all the rest of its provisions in full force. The order of the court then, did not prescribe the place of sale which was made in pursuance thereof.

The third objection is, that there is not sufficient evidence that said guardian complied with said order of sale. The report of the guardian which is sworn to by him, shows that the sale was made in strict compliance with the order of the court in every particular; and, in addition to that, the original certificate of the publication of the notice of sale is produced and proved. We are not aware that anything more has ever been held necessary, at least to make out a *prima facie* case of compliance with the order of sale. The guardian having been directed to make the sale of the land for the wards, thereby becomes an officer of the court for that purpose, and his report of his doings under that order of appointment, is an official report, and ancillary

testimony is no more required to support it, than in the case of a sale by a commissioner or any other officer of the court appointed to execute its order or decree.

The fourth objection is for general insufficiency, and requires no particular examination.

The fifth and last is the lapse of time, and is entitled to serious consideration, and is probably the one upon which the decision of the circuit court was based, for had this report been made at the next term of the court after the sale, no one would probably have thought of successfully urging objections against its approval and confirmation by the court. We think if there was no good reason for depriving the purchaser of his title, and turning him out of the estate, had the question been raised six months after his purchase by a report of the guardian as it should have been, he ought not now, after he has lain out of the purchase money, and enjoyed and probably improved the estate, for nearly eighteen years, without any suspicion of a defective title, so far as we know, or have any reason to believe, he ought not now to be deprived of the benefit of his purchase. Ordinarily, the lapse of time is not held to weaken the rights of a party holding land under a claim of title, and there is no good reason why it should in this case, more than in others. It is true that it was the duty of the guardian to have reported earlier, and it is also true, that the court, on the application of the purchaser, would have compelled the guardian to have reported so as to have perfected his title, but there is no positive rule of law fixing the time within which the report shall be made; and we ought not to overlook the fact, that until very recently, it has not been supposed on the part of many good lawyers, that the omission of the guardian to make the report, was necessarily fatal to the title of the purchaser. Here then we see an excuse, if not a justification, for this long delay, sufficient at least to indicate that the delay has not arisen from any fraudulent or improper design, or any intention to cover with forgetfulness, any improper proceeding which would have set aside the sale, had the report been made earlier. I repeat, if the sale was good, and would have been approved six months after it was made, there can be no possible grounds in equity and good conscience, or in reason or policy, why it should not be approved now. If the lapse of time, and this long enjoyment of the property, under the honest belief that he held a good title, has not strengthened the claim of the purchaser, they certainly have not weakened it. We are asked in this case to reverse the general rule and policy of the law, which is to quiet titles and protect long-continued possession when held in good faith. It cannot be that a right which was good, and would have been

confirmed seventeen years ago, and which the party has held and enjoyed ever since, supposing it was perfect all the time, has been gradually dwindling away ever since, till now it has ceased to exist altogether.   In good morals and in sound policy, if not in law, each succeeding year has but strengthened the purchaser's claim.   But as this is strictly a statutory proceeding, the general principles of equity cannot be invoked to support it, yet they surely do not weaken it.   We think the law would have required the court to have confirmed the report, had it been made soon after the sale, and we think that the law none the less requires that it should be approved and confirmed now.

Upon this argument it was objected that the motion to approve the report and confirm the sale, was addressed to the discretion of the court, and that no error can be assigned upon the occasion of the court denying the motion.    That objection is answered by the decision of this court in the case of *Ayres* v. *Baumgarten*, 15 Ill. 444.

The decision of the circuit court is reversed, and the cause remanded, with directions to approve the guardian's report of the sale.

*Judgment reversed.*