Gunter, J.
March. 20, 1894, the state of Colorado leased to one Davis the exclusive right to mine certain lands for oil and gas. Pertinent parts of the lease are:
“With the exclusive right to dig, bore and mine for and gather all oils and gases and all other valuable mineral substances found in solution in and upon said premises, to have and to hold the same for a *81 term of twenty years from this date; * * * with the full right of the said second party of appropriating to his own nse all of the oils and gases found upon said premises during said term.
“In consideration whereof the said second party agrees to give the said party of the first part five per cent, of the oils and gases produced and saved from said premises, * * #.
‘£ The party of the second part covenants to commence operations for said mining and boring purposes and to prosecute the same on some portion of the above described premises within two months from the date hereof, and sink said wells to a depth of 1,500 to 1,800 feet unless oil in paying quantities is sooner found (delays by unavoidable accidents excepted). Failure of the party of the second part to comply with the terms of this clause will nullify the lease and render it void. * * *
“It is understood and agreed that a second well shall be sunk to the above depth (unless oil is sooner found in paying quantities), within a period of eighteen months from the date of this lease, and in the event of these two wells being sunk as herein provided and the said wells should prove non-productive and non-paying, then the party of the second part agrees to pay a forfeiture of rental for said oil and gas rights of fifty dollars per year, to continue until such time and times as the drilling of new well or wells may be commenced, and the failure to pay said forfeit or rental will render this lease null and void. ’ ’
The lease was immediately assigned by Davis to appellant company, which, within one month thereafter, began sinking a well upon the premises in search for oil and gas, and during that year, 1894, sunk thereon three wells, each deeper than required by the lease. In 1895 it began a fourth well, which was completed in the early part of the summer of *82 1896. During the same time, in 1896, it did'some further work on two of the wells drilled in 1894. This is all that was done in the search for oil except that in April, 1901, after appellant’s lease had been canceled, and it knew' of the fact, it began the erection of an oil derrick on the premises. As a result of appellant’s search, oil was found in small quantity in one of the wells, but all of them proved non-paying and practically dry. Casings were drawn and the wells abandoned by the early part of the summer of 1896. Since, as stated, appellant has made no further effort to discover oik
March 8, 1898, A. R. Gumaer, general manager of appellant, wrote to the then register of the state board of land commissioners, that appellant had heard that its lease had been canceled, and inquired if this was true. The letter further said that appellant thus far had been unsuccessful in its search for oil, but that it intended to make another trial soon. Appellant received as a reply a letter signed “L. C. Paddock, Register A. M. C.,” dated March 12, 1898, stating appellant’s lease had not been forfeited “and is not subject by the conditions of the lease to cancellation. ”
July 23, 1900, the board of land commissioners, without notice to appellant, canceled its lease. March, 1901, appellee How applied to lease the land covered thereby, and in April following an order was made granting the application. The lease was never issued.
Appellant first heard April, 1901, of the cancellation and made immediate application to have it set aside. This was denied.. Appellant testified, through its general manager, that it had at no time intended to abandon the lease.
July, 1901, this action was instituted against the state board of land commissioners and appellee How, for the purpose of setting aside the order of the board *83 canceling the lease and. of obtaining an injunction restraining the issuance of the lease ordered, to appellee How. A preliminary injunction was obtained. Trial to the court resulted in the holding that appellant had lost its rights under the lease by failure to explore with reasonable diligence the demised premises for oil and gas. Judgment was entered dismissing the action, and therefrom is this appeal.
This is an oil lease. Its consideration dependent on finding oil or gas in paying quantities. It provides the number of wells, that is, the amount of work to be done in the search for oil during the first eighteen months of the term; it is silent as to the work to be done in the search during the remainder of the term, about eighteen years. Three wells, more than the stipulated number, were sunk during the first eighteen months of the running of the lease. These, together with the fourth well sunk, proved practically dry, and all were abandoned in the early part of the summer of 1896. No further effort was made to find oil or gas. Appellant having dug these wells could not under the lease have been compelled to 'make any further search for oil. This is in effect conceded by appellant when it says it had done all it was required to do undér the lease. It was optional with appellant whether it would do anything further under the lease.
In July, 1900, when- appellant had failed for more than four years to make any effort to find oil or gas, when it was optional with it whether it would make any further effort to develop the property, the lessor declared the lease at an end.
The trial court held that appellant was required to make diligent effort to satisfy-the condition precedent to an estate in the leased property vesting, the finding of oil or gas in paying quantities; that by its more than four years ’ non-action it had failed to exercise this diligence, and had therefore lost its rights *84 under the lease. Appellant says this holding is error.
In Steelsmith v. Gartlan et al., 45 W. Va. 27, February, 1895, Mrs. McGregor granted to Gartlan the exclusive right to mine certain lands for oil and gas for the term of five years, and so much longer as oil or gas should be found in paying quantities thereon. Gartlan was to give as the consideration therefor a percentage of oil produced and a certain sum per gas well discovered. The lease also provided that in case no well should be completed upon the premises within one month from the date thereof, the lease should become void. There was no provision in the lease requiring the lessee to search further for oil if this well proved non-paying.
Gartlan sunk the well, but finding neither gas nor oil in paying quantities, pulled the casing, plugged the well and left the premises. Mrs. McGregor, after repeated unavailing efforts to have Gartlan further search for oil or surrender his lease, in October, 1896, leased the same rights to Steelsmith, who sunk two wells, which came in producers, and before proceeding further sued to cancel the Gartlan lease. The court held that the lease, until oil was found in paying quantities, amounted to nothing more than a privilege to search the premises for oil and gas, and that the failure to prosecute the search with diligence, in the absence of oil being found in paying quantities, worked a loss to the lessee of all rights under the lease, and entered an order granting the cancellation prayed. In the course of its opinion the court said:
“The Gartlan lease is, with slight variance, in the usual form of such leases, and amounts to nothing more than the privilege of searching for oil and gas, and, if they can be found in paying quantities, then vests an oil and gas tenancy in the lessee for a period of five years or until exhaustion. Mrs. McGregor entered into the lease for the sole consideration of *85 prospective rents and royalties she would enjoy if the lessee, in diligent search therefor, should find oil or gas in paying quantities. If such lease failed to bind the lessee to diligent search for oil and gas, it was without consideration, binding on neither party, and voidable, if not void, at the pleasure of either
“A vested title cannot ordinarily be lost by abandonment in a less time than is fixed by the statute of limitations, unless there is satisfactory proof of the intention to abandon. An oil lease stands on quite a different ground. The title is inchoate, and for the purpose of exploration only, until oil is found. If it is not -found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned * * *.
“The lessee having abandoned the only obligatory search provided for in his lease, it died on his hands without surrender, forfeiture or intentional abandonment on his part-.’’
The case cites approvingly the Venture Oil Company v. Fretts, 152 Pa. St. 451. There, December, 1883, Gamble leased to Bobbins the exclusive right to mine certain land for oil and gas. The latter agreed to give as consideration therefor a percentage of oil and gas produced. Bobbins had leased adjoining farms for the same purpose, and agreed in the Gamble lease to commence operations for mining purposes within six months from the date of the lease; and should oil be found in paying quantities thereon, to commence operations within sixty days upon the adjoining farm leased, and so on until all the lands leased in the township were tested to “success or abandonment. ’ ’ If the search for oil on the first farm proved unsuccessful, he was not bound to continue the search on a second.
Bobbins sunk a well upon one of the farms named *86 within the six months stipulated. Neither oil nor gas was found. Hé drew his casing, plugged the well and abandoned it, and, as he had a right to do, made no further effort to test any part of the land covered by his leases. This in the fall of 1884. Seven years later, nothing further having been done by Robbins on any one of the leased farms, Gamble made a new oil lease of his farm to other parties under whom Fretts claimed title.
Robbins and the Venture Oil Company holding under him brought ejectment against Fretts. The court said:
“The case depends, therefore, on the construction of that lease and the rights acquired -by Robbins under it. The contract does not purport to be a sale of all the oil under the farm of Gamble, but a grant of the right to mine for and remove oil for a fixed period, twenty years, at a royalty of one-eighth of the oil so -found and removed. The right of the lessee or grantee under its provisions was to explore for, and determine the existence of oil or gas under the farm. If none was found, the rights of the grantee ceased when the explorations were finished. If oil or gas was found in paying quantity, then the contract took effect as an oil lease,.and the lessee had a right, and was under a contract obligation, to operate the land for the production of oil during the time and upon the terms fixed in the lease. When he entered upon the Scott farm and began to drill, he commenced the search for oil or gas that he contracted to make with Gamble. It was then his duty to continue the search with reasonable diligence until he had prosecuted it to ‘success or abandonment’ as to each of the farms to which his contract related.”
The' court held that the failure of the lessee to search the property for oil and gas with reasonable *87 diligence was fatal to the continuance of any rights Under the lease.
In Foster v. Elk Fork Oil and Gas Company, 90 Fed. Rep (C. C. A.) 178, there was an oil lease. Term, ten years, and for as much longer as oil or' gas should be produced in paying quantities, the lessee to pay therefor a' percentage of the oil obtained and a certain sum per producing gas well; an oil well to be sunk within one year from the date of the lease. There was no covenant to sink a second well. It was optional with the lessee to discontinue work when the first well was completed. The well was sunk as provided and proved dry. The lessee abandoned it and made no further effort for about six years to search for oil or gas, and before he made further effort the owner leased the same rights to other parties who sunk wells which came in producers, and they sued to annul the rights under the first mentioned lease. The court granted the relief prayed, and in the course of its opinion said:
“The lessee bored one well. It proved a failure in every other respect except that it saved the penalty, having been dug within one year. The well itself was dry. This is the only work done by the lessee on any of the land covered by these leases. No further effort was made. He failed to establish his rights. His inaction may well be construed an abandonment of these rights under his leases. * * * We are of the opinion that when he once tried and failed and after a reasonable time did not try again, he failed to establish his interest in this well, and lost all his rights under the contract. ’ ’
The case holds that until oil is found the title of lessee is for purpose of exploration only. If oil is not found, no estate vests in the lessee, and his title whatever it is, ends when- the unsuccessful search is abandoned. Failure to pursue the search *88 with diligence is construed as an abandonment, regardless of the intention of the lessee. — Steelsmith v. Gartlan, and Oil Company v. Fretts, are cited with approval.
Huggins v. Daley, 99 Fed. Rep. (C. C. A.) 606, was upon an oil lease. The owner, Marshall, leased to Hodges March, 1897, certain land for operation for oil and gas; term five years from the date of the lease and as much longer as oil or gas should be found in paying quantities thereon, not exceeding a term of thirty-five years, lessee as' consideration to pay percentage of oil produced. The lease contained a proviso that a well should be commenced within thirty and completed within ninety days from the date of the lease. The well was not commenced, nor was any effort made to find oil. Marshall leased the same rights to other parties in November, 1897, who found oil. The assignee of the original lease brought action against them to enjoin further prosecution of work. The court denied relief, holding that the rights under the original lease had been lost. Inter alia it said:
“By a course of decisions it is well settled in West Yirginia that a lease of this character is not a grant of property in the oil or in the land, but merely a grant of possession for the purpose of searching for and procuring oil. The title is inchoate, and for the purpose of exploration onfy until oil is found. If not found, no estate vests in the lessee; * * * . There is, perhaps, no other business in which prompt performance is so essential to the rights of the parties, or delays so likely to prove injurious, — no other class of contracts in which time is so much of the essence. There is no other branch of mining where greater damage is done by delay. Coal and precious metals lie either in horizontal veins or in pockets. They remain where they are until removed. *89 Oil and gas are the most uncertain,- fluctuating, volatile, and fugitive of all mining properties. They lie far below the surface, beyond the control of the human will, and beyond the reach of any legal process, whence they may flow unrestrained if the owner of the adjoining land bores a well down to the strata which holds them; and there is no law which can provide adequate, or indeed any, compensation for such results.”
It cites approvingly Foster v. Gas Company, supra, and says:
“This case fully establishes the doctrine that the consideration in leases of this character ‘evidently and clearly contemplates active operations upon the demised premises’; and when, after one failure, no further effort is made, mere inaction on the part of the lessee may well be construed an abandonment of rights under his leases.”
Steelsmith v. Gartlan, and Oil Company v. Fretts, supra, are approved, and the court further says:
“While most of the cases cited have gone upon the ground of abandonment, the governing principle in all oil leases of the character under consideration is that the discovery and production of oil is a condition precedent to the continuance or vesting of any estate in the demised premises; that such leases vest no present title in the lessee, and if, at any time, the lessee has the option to suspend operations, the lease is no longer binding on the lessor because of want of mutuality; and, where the only consideration is prospective royalty to come from exploration and development, failure to explore and develop renders the agreement a mere nudum pactum and works a forfeiture of the lease, for it is of the very essence of the contract that work should be done.”
*90 At page 781, 20 Am. and Eng. Ency. of Law, it is said:
“Where a lease provides, ‘as is frequently the case in oil and gas leases, for a tenancy for a definite period, or for so long as gas or oil can he found in paying quantities,’ and the only consideration is the prospective royalty, the lessee’s title is inchoate, and for the^ purposes of exploration only until oil or gas is found, but has the right of possession so long as he in good faith is engaged in boring wells and testing the gas and oil producing capacity of the land; but when it is demonstrated that oil and gas cannot be obtained, or when the search is abandoned, the lessee’s possession is at an end.”
Under these authorities appellant had only an inchoate title. to the oil and gas underlying the demised premises. Not having found either of them in paying quantities, it had no vested estate. To preserve its inchoate title, it was necessary to prosecute diligent search for oil and gas! This it did not do. And thereby, as the trial court ruled, lost its right under the lease.
Stoddard v. Emery, 128 Pa. St. Reports 436, 18 Atl. 339, is not in conflict with our conclusion; nor, as we think, in point as to any question here involved. There the oil lease provided the number of wells to be bored during the term. These were sunk and oil in paying quantities found. The assignee of the lessor sued to recover damages for breach of an alleged implied covenant to sink other wells. Judgment was for the defendant. The court said:
“The parties provided by the express terms of their contract how many wells should be put down, and that provision of the contract determines the question. When the number is expressed, there is *91 no room for any implication that there should he some other number.”
In that case there being no implied covenant upon which to sue, an action upon such covenant failed.
Here the number of wells to be sunk during the first eighteen months of the term was provided, but not the number to be sunk during the remaining eighteen years of the term. As to this part of term, the lease being silent as to the work to be done, the implication arose that the lessee should search with reasonable diligence for oil and gas to “success or abandonment.” And because this condition precedent to the continuance of the rights under the lease was not satisfied, appellant’s rights were at an end.
Appellant says, that the remedy of appellee board was not by way of a forfeiture of the lease, but by way of an action for a breach of an implied covenant to search for oil with diligence, and cites Harris v. Oil Company, 57 Ohio St. 118. There the lessee had found' and was producing* oil in paying quantities. The lessor attempted to declare a forfeiture upon the ground that the lessee was violating the implied covenant of the lease to mine the property with diligence. The question was whether this violation of the implied covenant was a ground of forfeiture, in tlie absence of an express provision in the lease, to such effect. The court held that as oil had been found in paving' quantities, the lessee had a vested estate in the lands for the purposes named in the lease. That under such facts an implied covenant arose to mine the property with diligence, and that upon such implied covenant an action at law would lie for damages -sustained' in the failure to mine with diligence, that in such action at law the lessor had sufficient remedy and could not resort to *92 a remedy by way of forfeiture. There whs an attempt to divest a vested estate for a breach of an implied covenant which had not been made a ground of forfeiture of an estate. The court declined to declare a forfeiture, and relegated the complaining party to a sufficient remedy, an action at law. .
Here oil had not been found in paying quantities. Ho estate had vested in the lessee. As the relation of landlord and tenant had not been established, no implied covenant to mine existed. There was no such covenant upon which to bring an action at law. ‘'Prior to finding oil in paying quantities, the lessee had merely the privilege of searching with diligence the premises for oil under the implied condition precedent, that if he failed to so search, his privilege was at an end. The only effect of his failure to further search for oil was the loss of his rights under the lease. He could not he sued upon an implied covenant to search, because no such covenant existed.
Harris v. Oil Company, supra, declares the law applicable where an estate has vested in the lessee by the discovery of oil in paying quantities, and an actionable implied covenant to mine with diligence has arisen.
In Harris v. Oil Company, supra, at page 130, it is said:
“In this case possession was delivered to the lessee and operations commenced, wells drilled, and oil produced in paying quantities, and in such cases it cannot be doubted that the lessee has a vested, though limited, estate in the lands for the purposes named in the lease * * *.
“"What the exact rights of the parties were after the execution of the lease, and before oil was found in paying quantities, is now immaterial, because oil was found, and is still being produced in paying quantities.”
*93 Core v. N. Y. Petroleum Co., 43 S. E. (W. Va.), 128, was an action to have a lease declared forfeited for violation of the implied covenant to mine with diligence. The court denied the relief because the plaintiff had an action at law upon the implied covenant. There, as- oil had been found in paying quantities, an estate had vested in the lessee, and the implied covenant to mine had arisen upon which an action at law would lie.
Here there was no estate in the lessee and no implied covenant upon which to sue. The same reasons distinguish this case from the one at bar as distinguish Harris v. Oil Co., supra. In the one case, 'that before us, the lessee had no estate, because the condition precedent to the vesting of the estate was not satisfied. There was no implied covenant upon which to sue. In the Core ease, the estate had vested, and the court declined to divest it for the alleged breach of the covenant not expressly made the ground of forfeiture, but relegated the- party to his action at law.
It is contended that appellee board is estopped by the above letter of March 12, 1898, from insisting that appellant had lost its rights under the lease. The pertinent matter in the letter is the opinion expressed by the register that the lease is not subject-to forfeiture. If we assume that the register of appellee board authorized the letter, which he says he did not, it does not work an estoppel, because he had no authority to bind the board by such an opinion, and the appellant was so advised by, the statutes of the state. The powers and duties of the register are defined by statute. He is not given the power to express an opinion on the legal effect of a lease. — Mills’ Ann. Stats., Yol. 2, p. 1980, § 3630.
That appellant had not searched the premises for oil and gas with reasonable diligence, that is, had *94 not satisfied the condition precedent to the continuance of its rights to explore for oil, was 'sufficiently presented by the pleadings. Further, this question was treated as an issue by the parties throughout the trial, and evidence introduced, without objection, to sustain it.
Judgment affirmed. Affirmed.