[No. 5055.]
[No. 2621 C. A.]

THE MORTGAGE TRUST COMPANY OF PENNSYLVANIA
v. REDD.

1. **Judgment—Collateral Attack—Want of Jurisdiction.**

Although a judgment is subject to collateral attack when the court is without jurisdiction, a judgment cannot be questioned collaterally for error committed in the exercise of jurisdiction. —P. 464.

**2. Same.**

Colo. const., art. 6, § 11, provides that district courts shall have original jurisdiction of all causes both at law and in equity, and such appellate jurisdiction as may be conferred by law; and Mills' Ann. Stats., § 2083, expressly gives district courts jurisdiction of the power to authorize guardians to sell real estate of their wards, and provides the procedure therefor. Held, that, in a proceeding by a guardian to obtain permission to sell the real estate of his wards, the constitution and the statute gave the district court jurisdiction of the subject-matter, and the filing of the petition gave it jurisdiction of the persons of the minors, and of the proceeding; that the court was then called upon to determine whether the facts entitled the petitioner to the relief sought, and, also, whether the petitioner had given the publication notice required by statute; and that, if error was committed in passing upon either of these questions, it was error, not in acquiring jurisdiction, but in the exercise of jurisdiction, and therefore could only be reviewed in a direct proceeding, as by an appeal therefrom or by writ of error thereto.—P. 469.

**3. Judgments—Failure to Give Statutory Notice of Sale—Cannot Collaterally Attack.**

Failure of a guardian to give the three weeks' notice by publication of his petition to sell his ward's estate, as required by Mills' Ann. Stats., § 2083, is not a jurisdictional defect that will render the judgment subject to collateral attack.—P. 469.

**4. Guardian and Ward—Sale of Real Estate—Publication Notice of Application to Sell—Sufficiency.**

Notice of a guardian's application to sell his ward's real estate, published in three successive weekly issues of a newspaper, the first publication being on April 24 and the last on May 8, and the date noticed May 9, satisfies the requirements of Mills' Ann. Stats., § 2083, providing that such notice shall be published for three successive weeks.—P. 477.

**5. Appellate Practice—Judgments—Validity—Presumptions.**

In an application by a guardian to sell his ward's real estate, the published notice of the application ran for May 9, and the order permitting the sale was made May 27, but it does not appear when the petition for permission to sell was filed. Held, that, in the absence of evidence to the contrary, it will be presumed that the petition was filed May 9 and that the court retained jurisdiction when it entered the judgment of May 27. —P. 478.

**6.   Trust Deeds—Foreclosure—Nonsuit.**

Where a guardian sold real estate belonging to his wards under an order of the court, and one of the wards, after reaching her majority, conveyed her interest in such lands to a subsequent purchaser, it was error to grant a nonsuit in an action to foreclose a trust deed thereon because of the alleged invalidity of the guardian's sale.—P. 479.

*Error to the District Court of Arapahoe County.*
*Hon. George W. Allen, Judge.*

Action by The Mortgage Trust Company of Pennsylvania against Etta L. Redd and others. From a judgment of nonsuit in favor of Etta L. Redd, plaintiff brings error.      *Reversed.*

Mr. R. H. GILMORE, for plaintiff in error.

Mr. CASS E. HERRINGTON and Mr. FRED HERRINGTON, for defendant in error.

Mr. JUSTICE GUNTER delivered the opinion of the court:

This was an action to foreclose a trust deed. At the close of the evidence for plaintiff—plaintiff in error—upon motion of defendant, Etta L. Redd, the court entered a judgment of nonsuit. It will be seen, as our opinion proceeds, that the vital question upon this review of that ruling is the validity of a judgment of the district court of said Arapahoe county, rendered May 27, 1889, permitting a guardian to sell the real estate of his wards, which realty later and at the date of the institution of this action was covered by the above trust deed. The procedure in securing the last mentioned judgment, that is, the order permitting the sale, was under section 2083, 1 Mills' Ann. Stats.; reading, so far as pertinent to this ruling, as follows:

"To obtain such order, the guardian shall present to the district court  *  *  *  a petition setting

forth the condition of the estate, and the facts and circumstances on which the petition is founded. Notice of such intended application shall first be given by publication in some public newspaper, published in the county where such proceeding is to be had, for three successive weeks; or, if no such newspaper is published, then by posting written notices, in three of the most public places in said county, at least three weeks before the time of the hearing by the court."

The facts material to this review are:

Etta L. and Lillie B. Redd, minors, owned certain real estate. Their guardian filed in the district court of said county his petition for leave to sell said realty, and, on May 27, 1889, the court made an order of sale containing, *inter alia,* this recital:

"Now, on this day, came the said petitioner, Alexander W. Redd, guardian of the persons and property of the above named Lillie B. Redd and Etta L. Redd, infant wards, and presented to the court here his verified petition as guardian aforesaid, praying leave and authority to sell at private sale and dispose of certain real estate of which said wards are jointly possessed in fee, * * * and it appearing to the court that said wards aforesaid had been duly and personally notified in the premises, and that three weeks publication of notice had been made and had according to law."

July 16, 1889, the guardian filed a second petition in the same case, asking therein permission to incumber said property to secure funds for the use of said wards. Leave was granted to incumber until a sale at a reasonable price could be made, and, acting thereunder, on July 16, 1889, the guardian, as such, borrowed of plaintiff $2,000, giving his promissory note as guardian therefor, of date July 23, 1889, payable August 1, 1892, and to secure the same, gave the trust deed involved. May, 1890, pursuant to the

order of sale of May 27, 1889, the guardian, for the consideration of $6,500, sold and conveyed the real estate to one Braun, subject to the trust deed. June 26, 1890, Braun sold and conveyed to defendant, Kline, said realty by warranty deed, subject to said trust deed. October 17, 1891, Lillie B. Redd, then of full age, for a valuable consideration conveyed all of her interest in said property to Braun. August 1, 1892, the note for $2,000, secured by the trust deed, fell due, and Kline, who claimed ownership of said real estate through the warranty deed from Braun, and through the operation of the above deed of 1891 of Lillie B. Redd, for the purpose of securing an extension of the note, entered into a written agreement with plaintiff whereby he promised to pay the note at its maturity as fixed by the extension; and further agreed that, in case of default in payment of the note, said premises might be sold "according to the provisions of said deed of trust." September 15, 1892, the guardian's sale made to Braun was reported to and approved by the court. June 5, 1893, Kline conveyed the premises to one Findlay, who, July 21, 1894, reconveyed to Kline. Such is the history of the title to the date (April, 1896) of the institution of this suit to foreclose. The proceeding is against the land, there being no effort to hold Etta L. Redd personally. Alexander W. Redd, Lillie B. Redd, Etta L. Redd, Findlay, Kline, the heirs of Braun, and others unnecessary to mention, were made parties defendant. All of defendants defaulted except Etta L. Redd, who appeared by answer and cross-complaint and by counsel at the trial. At the close of the evidence for plaintiff, defendant, Etta L. Redd, moved a nonsuit, which, as stated, was granted. To review the judgment entered in pursuance of this motion, the case is here.

As Kline, by his above-mentioned agreement of August 1, 1892, in consideration of an extension in the time of payment, assumed the note and agreed that the trust deed should be a lien on the realty in question, he cannot question the validity of the note or trust deed, nor is he doing so. Further, if Kline is the owner of said realty, then Etta L. Redd has no interest in this proceeding to foreclose, which is directed solely against the realty, and no right to object to it. There is no question about Kline's ownership of the realty, if the judgment permitting the sale by the guardian of May 27, 1889, is valid.

In this proceeding to foreclose the trust deed, defendant, Etta L. Redd, by her answer, assails the validity of that judgment, on the ground of an alleged jurisdictional infirmity.

Although this ground of assault—lack of jurisdiction—is urged in this proceeding to foreclose, which proceeding is collateral to that in which the judgment so assaulted was rendered, yet it is the right of the defendant to so attack the judgment, and, if jurisdictional infirmity be shown, it will be fatal here to that judgment. In *Wilson v. Hawthorne,* 14 Colo. 530, 533, the court said:

"Though the authorities are somewhat conflicting upon questions of this kind, we think that the better doctrine is, that a judgment rendered without obtaining jurisdiction of the person may be impeached and set aside by a proceeding in equity for that purpose; that in such proceeding the recitals of the record will not be taken to import absolute verity; and also that an action brought upon a judgment pronounced without obtaining jurisdiction of the person of the defendant may be defeated by a proper answer, under a system of procedure allowing equitable defenses to be interposed in all civil actions. To warrant such relief, the contradiction of the record

must be clearly established; but we need not discuss the kind or *quantum* of evidence required, since, in this case, no issue was taken on the cross-complaint."
—Colo. Civil Code, §§ 59, 60; Bliss, Code Pl., § 347; Freem. Judgm., § 495; *Marr v. Wetzel,* 3 Colo. 2; *Great West Min. Co. v. Woodmas of Alston Min. Co.,* 12 Colo. 46; *Thompson v. Whitman,* 18 Wall. 457; *Ridgeway v. Bank,* Hump. 523.

In *Hallack v. Loft,* 19 Colo. App. 83, it is said:

"The right to attack a judgment for jurisdictional infirmity, or for fraud, is not confined to the complaint; it extends as well to the answer and replication."

See, also: *Smith v. Morrill,* 12 Colo. App. 233; *Symes v. People,* 17 Colo. App. 466; *Symes v. Charpiot,* 17 Colo. App. 463; *Tabor v. Bank of Leadville,* 35 Colo. 1.

While the right to attack a judgment in a collateral proceeding for a jurisdictional infirmity—that is, error in assuming jurisdiction—is well settled in this jurisdiction, on the other hand, it is equally well settled that a judgment cannot be questioned collaterally for an error committed in the exercise of jurisdiction.

The opinion in *Medina v. Medina,* 22 Colo. 146, supports the syllabus, which reads thus:

"Decrees and orders of court entered in the exercise of jurisdiction, even though erroneous, are not open to collateral attack."

In *Brown et al. v. Tucker,* 7 Colo. 30, 34, the court said:

"The decided weight of authority is to the effect that, whether jurisdiction has been obtained by the service of process, actual or constructive, all subsequent proceedings are exercise of jurisdiction, and, however erroneous, they are not void, but voidable only, and not subject to collateral attack."

See, also, *Powell v. National Bank of Commerce,* 19 Colo. App. 57, 68.

The difficulty lies not in the existence or recognition of the general principle so announced, but in applying it to the facts here presented.

The statute (§ 2083, *supra*) provides:

"Notice of such intended application shall first be given by publication in some public newspaper, published in the county where such proceeding is to be had, for three successive weeks."

The defendant says that the petition for leave to sell was filed, and the judgment authorizing the guardian to sell was rendered, without giving the notice so provided; that giving such notice is a jurisdictional requirement, and its omission fatal to the judgment authorizing the sale. If giving such notice was not essential to jurisdiction, its omission, being simply an error in the exercise of jurisdiction, is immaterial in this collateral proceeding, and the proof of a failure to give the notice would not, in this proceeding, affect the validity of the judgment authorizing the sale. If the omission of the notice, in the procedure leading up to the order of sale, was but an error in the exercise of jurisdiction, it can be reviewed only in a direct proceeding such as a writ of error to, or an appeal from, that judgment. It has been, and is, the consistent policy of the appellate courts of this jurisdiction, and is, we think, a most wholesome one, to uphold against collateral attack judgments of courts of general jurisdiction when the parties have once had their day in court. In fact, the rule permitting, in a collateral proceeding, attacks on judgments on jurisdictional grounds and permitting the absence of jurisdiction to be shown even in contradiction to jurisdictional recitals in the record, is founded largely on the reason that a party should not be, and cannot be, deprived of his constitutional right, his day

in court, by a false jurisdictional recital in the record, as that he had been personally served with summons, when, in truth, there had been no such service.— Freeman on Judgments (4th ed.), vol. 1, section 133.

As this opinion proceeds, it will appear that the complaining defendant, Etta L. Redd, had her day in court, and that the giving of the statutory notice in question was not essential to the court acquiring personal jurisdiction as to her.

The general policy of the courts of this commonwealth to surround judgments of courts of general jurisdiction, even when not proceeding according to the course of the common law, with every presumption of jurisdiction and thereby to uphold such judgments, is seen in their holdings in cases of collateral attacks upon judgments in attachment suits and decrees rendered under the irrigation statutes.

*Van Wagenen v. Carpenter,* 27 Colo. 444, was an action to recover a money judgment in which jurisdiction of the defendant—a nonresident—was obtained by attaching real estate standing in the name of a third party. It did not affirmatively appear from the record that the attachment was served as required by our code. While it was admitted that jurisdiction depended upon service of the writ of attachment, as required by the code, yet it was contended that it was not essential to the validity of the judgment that the record should affirmatively show this fact. It was contended that, although the proceeding by attachment was a special statutory proceeding, yet, as the judgment in such proceeding was that of a court of general jurisdiction, the same presumptions were in favor of jurisdiction in such action as in other cases.

The court, in that case, *inter alia,* said:

"There exists an irreconcilable conflict in the authorities upon this question. This conflict arises from the view the different courts entertain as to the na-

ture of the jurisdiction that the courts exercise in enforcing remedies provided by the attachment acts; some holding that the power to take cognizance of attachment proceedings is a special jurisdiction conferred by the statute, which was not within the general jurisdiction of the courts; and that every thing necessary to show that such jurisdiction has been rightfully exercised must appear upon the face of the record; while, by others, it is held that attachment proceedings are within the general jurisdiction conferred by the constitution, and that the statute has only prescribed a new mode or process for bringing the persons or property within their control; and that the same presumption in favor of jurisdiction of such actions will be indulged as in other cases.''

The court then cites a number of cases in support of the latter view, and proceeds:

''We think the rule announced in these cases is supported by the better reason; and that, when action of a court of general jurisdiction is invoked in attachment proceedings, although its power to so act is conferred by a special statute, it, nevertheless, in exercising such special powers, acts judicially and is none the less a court of general jurisdiction because it proceeds according to rules and practice prescribed by the statute. The same considerations of public policy and reasons exist why the record, if silent, should be aided by the same presumptions which obtain in cases of personal service.''

The same declaration of the law is made by this court in the recent cases of *Burris v. Craig,* 34 Colo. 383, and *Farmers' Union Ditch Co. et al. v. Rio Grande Canal Co.,* 37 Colo. 512.

Mr. Freeman is in full accord with the law as so announced by our courts. At section 123, volume 1 (4th ed.) of Freeman on Judgments, he says:

"The doctrine that the judgments of courts of record are of less force, or are to be subjected to any closer scrutiny, or that they are attended with any less liberal presumptions, when created by virtue of a special or statutory authority, than when rendered in the exercise of ordinary jurisdiction, has been repudiated in some of the states; and the reasons sustaining this repudiation have been stated with such clearness and force as to produce the conviction that the doctrine repudiated has no foundation in principle, however strongly it may be sustained by precedent.  *  *  *  And, finally, it is suggested that, as no reason has been given for regarding the same tribunal with different degrees of consideration, according to circumstances which seem not to affect its claims to our confidence, therefore, all its adjudications, though arising out of the exercise of lawful jurisdiction conferred at different times or from different but equally competent sources, should be subjected to similar rules and indulged with equal presumptions."

The policy of the law to uphold judgments in cases of collateral attack is seen in the following citations:

"In doubtful cases, as the safer course, the courts are inclined to treat defects as errors or irregularities rather than jurisdictional defects."— Am. & Eng. Enc. Law (2d ed.), vol. 17, p. 1066.

"Notwithstanding general definitions, the courts have found it difficult to determine, in many cases, whether errors and omissions in the course of legal proceedings rendered the proceedings void, or were mere irregularities. In doubtful cases, however, as the safer course, the courts incline to treat the defects as irregularities rather than as nullities."—*Salter v. Hilgen,* 40 Wis. 363, 365.

"No order which a court is empowered, under any circumstances in the course of a proceeding over which it has jurisdiction, to make, can be treated as a nullity merely because it was made improvidently, or in a manner not warranted by law or the previous state of the case. The only question in such a case is, had the court or tribunal the power, under any circumstances, to make the order or perform the act? If this be answered in the affirmative, then its decision upon those circumstances becomes final and conclusive, until reversed by a direct proceeding for that purpose. In the case before us, it was for the circuit court to determine, in the first instance, when and how the authority with which it was invested to direct a sale, should be exercised; and if, in so doing, it committed an error, no matter how egregious, whether in the construction of the statute or otherwise, still the order was valid until reversed on appeal. It was a mere error or irregularity, which could only be taken advantage of by appeal, but cannot be inquired into in this proceeding."—*Tollman v. McCarty*, 111 Wis. 401; *Salter v. Hilgen et al., supra.*

"The district courts shall have original jurisdiction of all causes, both at law and in equity, and such appellate jurisdiction as may be conferred by law." —Colo. Constitution, article 6, section 11.

By section 2083, *supra,* that court was expressly given jurisdiction or the power to authorize guardians to sell real estate of their wards, and the procedure for the exercise of such power was thereby provided. By the constitution and the statutes, it was given jurisdiction of the subject-matter, and, by the filing of the petition, the court acquired jurisdiction of the persons of the minors. By the filing of the guardian's petition for leave to sell, the court acquired jurisdiction. It was then called upon to determine whether the facts entitled the petitioner to the

relief asked. It was also called upon to determine whether the petitioner had given the notice required by the statute. If error was committed by the court in passing upon either of these questions, it was error, not in acquiring jurisdiction, but in the exercise of jurisdiction. If the error, committed in determining whether the required notice had been given, was error in the exercise of jurisdiction, then, under all the authorities, such error could be availed of only by a review of that judgment in a direct proceeding, as on appeal therefrom or error thereto. The statute under which this proceeding was conducted was taken from the statutes of the state of Illinois, and had received a construction there before its adoption by us.

"Under a familiar rule, by adopting this statute, we accepted this construction."—*Orman v. Bowles*, 18 Colo. 463, 470.

In *Mason v. Waite*, 4 Scammon 127, 133, the action was upon a promissory note; a defense thereto was want of consideration, in that no title had been conveyed to the land, constituting the consideration for the note. The contention was that a sale, by a guardian, of the land, under a statute similar to that before us, was void because the court, in the action authorizing the sale, was without jurisdiction of the person of the minor. The court overruled this contention, saying:

"It was not necessary that the ward should have a day in court. The proceeding was not adverse to her interest, nor against her. It is her own application, by her legally constituted guardian. She is in the court by her guardian. No summons to her was necessary; nor could she have any other day or guardian *ad litem* in court, unless upon suggestion, as *amicus curiae*, it would appear that the guardian was about to abuse the trust, or was seeking power to injure and misapply the estate. I think it altogether

an erroneous view of such cases to regard them as proceedings against the heir, to divest her of her interest or property. It is an application by her, or on her behalf, for power and authority to do acts for her benefit and interest."

This declaration of the law is expressly approved in *Orman v. Bowles,* 18 Colo. 463-469. *Young et al. v. Lorain et al.,* 11 Ill. 625, was an action in ejectment. To sustain the general issue, the defendants relied upon title deraigned through a sale by the guardian under a statute substantially the same as the one here involved. Defendants introduced the record of the circuit court in support of the validity of their title deraigned through the sale by the guardian. Plaintiff objected to the admission of the notice of intention to petition the circuit court for the order of sale, also to the sufficiency of the petition and the notice of sale under which the property was sold, and other steps in the procedure. The court, in overruling these objections and in commenting upon their insufficiency, said:

"They all (the decisions) agree that enough must appear, either in the application or the order, or, at least, somewhere upon the face of the proceeding, to call upon the court to proceed to act; and all agree that, when that does appear, then the court has acquired jurisdiction, or, in other words, is properly set to work. When the jurisdiction is thus established, and the court is authorized to hear, it follows, as a necessary consequence, that it is authorized to adjudge, and that judgment thus being entered by authority of law, no matter how erroneous it may be, or even absurd—though it be made in palpable violation of the law itself, and manifestly against the evidence—is, nevertheless, binding upon all whom the law says shall be bound by it—that is, upon all parties and privies to it—until it is reversed in a

regular proceeding for that purpose. While it re-
mains a judgment, it cannot be inquired into, nor its
regularity questioned, in any collateral proceeding.
In another action, the inquiry is not whether the court
acted properly, but had it a right to act at all? Was
the judgment rendered in the exercise of an usurped
power, or of a conferred authority? If the former,
the whole proceeding is utterly void, everywhere. If
the latter, it is always obligatory, till reversed. The
rule then is a very simple one, and, ordinarily, of easy
application. The inquiry is not whether the proof
was sufficient, but, was such a case presented to the
court as called upon it, under the statute, to act, to
deliberate, and to decide? Was its aid properly in-
voked? If so, then the court acted within its juris-
diction, and every presumption is in favor of its
judgment. Indeed, nothing can be alleged against
it now.''

In speaking of the notice of intention to apply
for the order permitting the sale, the court said:

''Several objections were taken to the notices of
the sale and other matters involved in the adjudica-
tion of the circuit court, either in granting the orig-
inal sale, or in the final order, confirming the report
of the guardian; but they can avail nothing. That
court having had jurisdiction to hear and determine,
it cannot be permitted now to deny that it proceeded
properly and determined correctly.''

In *Orman v. Bowles, supra, Young et al. v. Lo-
rain et al.* is cited with approval in passing upon a
question arising out of the statute before us, and the
court considered it a sufficient reason for such approv-
al that the statute had been borrowed from Illinois,
and had been construed upon the point there in ques-
tion in *Young et al. v. Lorain et al.*, by the supreme
court of that state, before its adoption here. The
same reason goes in support of the binding force of

*Young et al. v. Lorain et al.,* upon the question before us. In *Harvey, Guardian of the Heirs of Sweet,* 16 Ill. 127, 129, which was a review by appeal from the order of the circuit court declining to approve a report of sale of a guardian, who had proceeded under and by authority of the statute under consideration, the court quotes with approval the following, from *Young v. Lorain:*

"They all (the decisions) agree that enough must appear, either in the application or the order, or, at least, somewhere upon the face of the proceeding, to call upon the court to proceed to act; and all agree that, when that does appear, then the court acquired jurisdiction, or, in other words, is properly set to work."

*Iverson et al. v. Loberg,* 26 Ill. 180, was an action of ejectment. The defendants relied upon a sale by an administrator of the real estate in question under an order of the county court. The validity of the judgment of the county court authorizing the sale was attacked upon certain alleged infirmities in the petition for the order of sale, and certain defects in procedure *de hors* the petition; the court said:

"We are obliged to affirm this judgment much against our inclination. This sale was, no doubt, a great outrage, and we should, as at present advised, not hesitate to reverse the proceeding, were it directly before us. But here it comes up collaterally, and we cannot disregard that proceeding unless it was void for the want of jurisdiction. We cannot hold that such was the case. The petition stated enough to require the court to act in the premises— to set it in motion—and that was sufficient to give the court jurisdiction, and whatever was done under it, was not in the exercise of an usurped power, but of one conferred by law, and, although the court may have exercised that power erroneously, its orders and

decisions were binding till reversed. If we are to look into any errors in that proceeding, it must be brought before us by writ of error."

*Mulford v. Stalzenback,* 46 Ill. 303, 307, was a bill in chancery to set aside deeds made under order of court by the guardian of lands belonging to the complainants, minors, upon the ground, among others, that the circuit court making the order of sale had no jurisdiction. *Young et al. v. Lorain et al.* was approved, and the court said:

"The rule is that enough must appear, either in the application or the order, or, at least, somewhere upon the face of the proceedings, to call upon the court to proceed to act, and when that does appear, then the court has properly acquired jurisdiction."

*Harris v. Leisten,* 80 Ill. 307, reaffirms the well-settled principle of law that:

"Where a court has jurisdiction of the subject-matter and the persons of the parties, its judgment or decree, when questioned collaterally, will be held valid."

In *Gibson v. Roll,* 27 Ill. 88, 90, *Mason v. Waite, supra,* is approved in its holding that an application to sell real estate by the guardian of a minor under the section of statute before us, "is not a proceeding adverse to the heir, but is a proceeding by his guardian for his benefit, and it should be treated as if the proceeding were by the heir himself."

In *Goudy et al. v. Hall,* 36 Ill. 313, 319, the general principle is reiterated in this language:

"When the validity of acts done under a judicial proceeding is collaterally called in question, we have to look only to the jurisdiction, and, if that is found to have existed, then it matters not how erroneous the proceedings of the court may have been, the rights of third persons, acquired while such proceedings

were unreversed, and by virtue of them, must be protected.''

There is nothing in *Orman v. Bowles,* 18 Colo. 465, *contra* the decisions we have just cited. There the guardian, acting under the statute before us, had obtained an order of sale and sold certain real estate, and the sale had been confirmed by the court. On writ of error to the judgment of confirmation, it was sought to reverse that judgment. The proceeding was a direct one. It was contended that there was fatal error in the petition invoking the jurisdiction of the court. The appellate court held otherwise. It was contended that fatal error was committed in not appointing a guardian *ad litem* for the infant wards. Upon this point, the court said:

''Upon examination of the authorities cited by counsel for appellants, we find them to be cases wherein the proceedings to sell the infant's estate were either adverse to this interest, or were had under statutes making the appointment of a guardian *ad litem* a requisite to the validity of the sale. Our statute does not require such appointment.''

The reason assigned by the court was, that the minors were in court by their guardians, and that the proceeding was not adverse to their interests nor against them. The next point made, was that the petition for the order of sale was based upon an insufficient notice. The court held it unnecessary to decide this question, or its effect upon the proceeding, because the sufficiency of the notice was not questioned as to the lands actually sold under the decree. Other points are ruled in the decision, but the question before us was not decided. Further, that proceeding was direct, while the present proceeding is collateral.

*Knickerbocker v. Knickerbocker,* 58 Ill. 399, was a writ of error to a judgment authorizing a guardian

to sell certain real estate belonging to the ward. It therefore differed from the present proceeding in that there the attack was direct; here it is collateral. The court there, in effect, declared that the judgment, or order of court, was entered without giving the preliminary notice of intention to apply for the order, and that absence of such notice was fatal to the decree. The court does not decide that, if the judgment had been called in question in a collateral proceeding, it would have declared the judgment a nullity because of the failure to give the statutory notice here in question.

To sum up, the order of sale was made in 1889, the sale thereunder in 1890, and the sale approved by the court in 1892. Seven years after the date of the order permitting the sale—that is, in 1896—in the present action brought to foreclose the trust deed in a collateral action, the effort is made, because of the alleged insufficiency in the length of publication of the notice of the guardian to apply for the order of sale, to have such order or judgment declared a nullity. In the mean time, the property, for money considerations substantial in amount, and by warranty deeds, has several times changed hands. The authorities agree that the judgment should not be disturbed in this character of proceeding—collateral—except for a jurisdictional infirmity; they are further to the effect that, where it appears that the court had jurisdiction of the person, and, therefore, the party had his day in court, in doubtful cases defects in procedure should be treated as errors subject to review only in direct proceedings, and not as jurisdictional defects. Further, the infirmity complained of has been held, in the state from which we have adopted the statute, as not jurisdictional when presented, as here, collaterally.

We conclude that it cannot be shown in this proceeding, for the purpose of invalidating the judgment of 1889, that there was a failure to give the notice prescribed by the statute. If there was a failure to give such notice, it constituted an error in the exercise of jurisdiction, and not in its assumption. The judgment could be questioned for such alleged error only by such direct proceeding as writ of error to, or appeal from, the judgment authorizing the sale or the judgment confirming the sale. It is not necessary for us to hold, and we express no opinion as to whether, the absence of such notice would constitute reversible error if the question were here by such direct proceeding.

If, however, it be conceded, for the purposes of this ruling, that giving the notice in question is a jurisdictional requirement, and, therefore, that its omission can be shown for the purpose of nullifying the judgment in this collateral proceeding, has it been shown that such notice was not given?

The notice was published in the weekly issue of a newspaper for the period of two weeks, and for three consecutive insertions, the first publication being in the issue of April 24, 1889, and the last publication in the issue of May 8, 1889, the date noticed being May 9. Defendant, Etta L. Redd, says that such publication was fatally defective in that it was not made for a sufficient length of time; that the first publication should have been made in an issue of the newspaper published at least three weeks before the day noticed for the filing of the petition requesting permission to sell.

Section 2083, *supra,* provides:

"To obtain such order, the guardian shall present to the district court a petition, setting forth the condition of the estate, and the facts and circumstances on which the petition is founded. Notice of

such intended application shall first be given, by publication in some public newspaper, published in the county where such proceeding is to be had, for three successive weeks.''

The remainder of the section, pertinent to notice, applies to posting written notices in counties where no newspaper publication can be made.

As has been seen, the statute provides that notice of the intended application shall first be given by publication in some public newspaper, published in the county where such proceeding is to be had, ''for three successive weeks.'' The notice here was published in three consecutive weekly issues of a newspaper before the date noticed for filing the petition or making the application for the order of sale. Such publication was for three successive weeks, and satisfied the requirements of the statute.—*Decker et al. v. Myles,* 4 Colo. 558: *Calvert v. Calvert,* 15 Colo. 390, 395; *Orman v. Bowles,* 18 Colo. 464, 472.

It is next contended that the notice in evidence ran for May 9, and, even if sufficient to sustain an order of sale based on a petition filed on that date, it will not support an order of sale resting upon a petition filed on a later date.

In discussing this contention, we assume again, only for the purpose of the ruling, that the question of the efficiency of the publication of the notice of application for the order can be considered here.

While the certificate of the trial judge does not state that the bill of exceptions contains all the evidence, we are able to see, from an inspection of the bill, that it does present all of the evidence submitted to the trial judge and upon which he acted.

Therefrom it appears that a notice for leave to sell ran for May 9. A petition for leave to sell was filed. It does not appear, from the evidence, upon what date it was filed. May 27, the order permitting

the sale was made. This order was the judgment of a court of general jurisdiction, and, although rendered in a special statutory proceeding, the same presumptions of jurisdiction of the subject-matter and of the parties attach thereto as to judgments of the same court when proceeding according to the course of the common law.—*Van Wagenen v. Carpenter, supra; Burris v. Craig, supra; Farmers' Union Ditch Co. v. Rio Grande Canal Co., supra.*

Applying this presumption to the facts, it will be presumed, in the absence of evidence to the contrary, that the petition was filed May 9, and that the court retained jurisdiction when it entered the judgment of May 27.

Therefore, we conclude that it did not affirmatively appear from the evidence before the trial judge that the notice by publication provided by the statute had not been given.

If we were wrong in the reasons heretofore assigned for a reversal, still the case should be reversed.

In 1892, Lillie B. Redd, then of full age, conveyed her undivided one-half interest in the property covered by the trust deed to Braun. This interest, perforce a previously made warranty deed running from Braun to Kline, passed to Kline, and was owned by him at the time he agreed that the trust deed should constitute a lien on the realty involved. He cannot question, and does not question, the validity of the trust deed as a lien or otherwise. This rendered the trust deed manifestly good as to the undivided one-half interest of Lillie B. Redd. For this additional reason, the court erred in granting the nonsuit and dismissing the case.

*Judgment reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE MAXWELL concurring.