[No. 3428.]

SALISBURY ET AL. V. LAFITTE.

1. PLEADINGS—*Construction.* On general demurrer the complaint must be liberally construed. General allegations showing a right of action suffice.

2. —— *Answer—Evasive Denials.* The first defense of the answer traversed every allegation of the complaint "except as expressly herein admitted." Nothing indicated what was intended by this exception. Held evasive, if attacked by demurrer or motion; but no exception being taken to it, it was accepted as putting in issue the material allegations of the complaint.

3. —— *Answer—Separate Defenses,* must each be regarded as if standing alone, and complete in itself, unless it distinctly and intelligently refers to what is elsewhere stated.

4. —— *Conclusions of Law.* An averment that the court in which a certain judgment was rendered "was without jurisdiction to render the judgment" is a mere conclusion of law.

5. —— *Certainty—Relevancy.* The complaint alleged that a certain promissory note had been levied upon by the sheriff under garnishee process in favor of defendant and against plaintiff, and by order of the court had been turned over to the sheriff for sale, that defendant prevented the sale and induced the sheriff to turn the note over to him, and converted it. Neither the complaint nor the answer suggested that defendant claimed the note through any execution sale. Averments of the reply that defendant "never recovered any judgment" against plaintiff, and "no execution ever issued against her," held irrelevant and immaterial to the defenses presented by the answer.

So, averments of the reply that defendant "never became the owner" of a certain judgment, nowhere else mentioned or alluded to, or in any way connected with the supposed right of action.

6. —— *Judgment on the Pleadings.* Even though the defendant moves for judgment on the pleadings, and his motion is denied, he cannot be condemned in damages, without evidence, where he has interposed the general denial.

7. JUDGMENTS — *Presumption of Jurisdiction.* Whoever would question the judgment of a court of general jurisdiction for want of jurisdiction of the person must definitely negative every fact and process by which jurisdiction might have been obtained. A mere averment, in questioning a judgment reviving a former judgment, that "no order to show cause why said judgment should not be revived was ever issued," not denying the service of process in other form, or voluntary appearance, is wholly insufficient.

8. —— *Presumption of Regularity.* Nothing appearing to the contrary, it must be presumed that the district court in permitting the filing of a substituted return to a writ previously executed, and lost from the files, acted in the due exercise of its lawful powers.

9. APPEALS—*Questions Not Presented Below,* will not be considered.

10. —— *Entire Judgment Against Two Erroneous as to One,* will be reversed as to both.

11. MAXIMS—*Wrong-doer Shall Not Have Advantage of His Own Wrong.* A promissory note is in the hands of the sheriff, to be sold on execution against the payee. The plaintiff in the execution prevents the sale and induces the sheriff to deliver the note to him. In an action by the payee for the conversion of the note, he will not be heard to say that it is in the custody of the law.

*Appeal from Larimer District Court.* HON. JAMES E. GARRIGUES, Judge.

Mr. J. C. GUNTER, Mr. J. M. MAXWELL, for appellants.

No appearance for appellee.

Judgment reversed.

WALLING, J.

In the district court, the appellee, plaintiff in the action, recovered judgment against the defendants therein, Salisbury and Wildeboor, who have appealed from that judgment.

1. Defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action; and that objection being renewed here by a suitable assignment of error, it will be considered at the outset. The complaint, which was filed August 27th, 1907, was one to recover damages for alleged conversion by the defendants of a promissory note, secured by deed of trust on real estate, executed to a public trustee. The objections urged against the sufficiency of the complaint are: *First*, that it failed to show that the plaintiff was in possession, or had the right to immediate possession of the note at the time of the supposed conversion; *second*, that it did show that the note and trust deed were *in custodia legis*, at the time of the alleged conversion thereof, and consequently, that plaintiff could not have had such possession or right of possession, as would sustain her subsequent action for conversion of the same. Neither of these objections appears to be valid. The first is based upon the initial allegation of the complaint, that "she (plaintiff) is the owner and entitled to possession of" the described note. But the sufficiency of the complaint cannot be determined from that allegation alone. It was further therein alleged that the note and trust deed were levied upon by the sheriff of Pueblo county, "and garnished in the hands of said public trustee, who then had possession for the purpose of foreclosure" and that the same were given over to said sheriff by

order of court, upon an execution in favor of de-
fendant Salisbury against the plaintiff, "to be sold
by the sheriff and proceeds applied on said execu-
tion or judgment;" and that Salisbury wrongfully
prevented the sale of the note, and induced the
sheriff to turn over to him the note and trust deed,
and, after that was done, "wrongfully and fraudu-
lently converted said note and deed of trust to his
own use and benefit," etc.   Construing the com-
plaint liberally, as we are bound to do upon this
demurrer, it appears therefrom, in a general way,
that the securities in controversy were taken from
the possession of plaintiff's bailee, by garnishee
process under execution against appellee in favor
of Salisbury, and, pursuant to an order of the court
out of which the process issued, turned over to the
sheriff for sale, the proceeds to be applied on the
execution; and that Salisbury in some manner in-
duced the sheriff to turn the note and trust deed
over to him, without any sale, and thereupon con-
verted the securities to his own use.   If these al-
legations are true, Salisbury was clearly liable to
appellee for the wrongful conversion of the secur-
ities; and it could not avail him to say that they
were in the custody of the law, by virtue of the levy
and garnishment proceedings, under execution, if he
in fact obtained possession of the securities, by in-
ducing the sheriff to violate his duty under the or-
der of the court and the writ.

It was further alleged that the note was amply
secured and was worth its face value with accrued
interest; and that at some time, not stated, "the
defendant Salisbury wrongfully and fraudulently
transferred or delivered the note and deed of trust

to the defendant Wildeboor;'' followed by allegations to the effect that the latter acquired no better title than Salisbury had, and that each of the defendants had wrongfully converted the securities. It may be conceded that the allegations of the complaint were wholly uncertain and ambiguous; but it was sufficient to state a cause of action as against the objections made on behalf of appellants.

2. It is further insisted, for the appellants, that the district court erred in its ultimate findings and judgment against them, as well as in overruling their motion for a new trial; and the argument in that behalf requires a further investigation of the pleadings and proceedings.

The defendants filed an answer to the complaint, which contained six separate alleged defenses. Appellants rely on the first and fourth of those defenses only; and the determination of the question arising on the appeal does not demand special consideration of the rest of the answer. By the first defense, defendants denied each and every allegation of the complaint, ''except as herein expressly admitted and stated.'' The defense did not indicate what was included in the exception from the general denial, and, for that reason, was evasive and insufficient, if attacked by motion or demurrer. The code expressly authorizes ''a general or specific denial of each material allegation in the complaint *intended to be controverted* by the defendant.'' Mills' Ann. Code, sec. 56. It is believed to be correct practice when the defendant does not wish to deny all allegations of the complaint, to admit a part and deny generally the remainder. But when that form of denial is adopted, it should definitely ap-

pear what is admitted, and what is intended to be.
controverted. It is probable, from an examination
of the entire answer, that the exception from the
general denial in the first defense was intended to
refer to an admission, in the so-called sixth defense
of the answer, of the allegations of the complaint
respecting the levy upon the note and trust deed
by the sheriff of Pueblo county, under execution,
and the order of court in the garnishment proceed-
ing, turning them over to the sheriff for sale, etc.
To be sure, each separate defense must be regarded
as if it stood alone, and should be complete in it-
self, unless it distinctly and intelligibly refers to
what is stated elsewhere in the answer; but, inas-
much as no objection was made to the form of the
denial, by motion or demurrer, it may be regarded.
as putting in issue the material allegations of the
complaint.—*Bessemer I. D. Co. v. Woolley,* 32 Colo.,
437, 444.

The fourth defense of the answer set forth *in
ipsis verbis* an "order and judgment," alleged to
have been duly given and made on the twenty-first
day of December, 1903, in an action then pending in
the district court of Pueblo county, "between George
Salisbury, plaintiff, and Mary LaFitte, defendant,
and Belle Buckley, intervenor, and A. T. Stewart,
garnishee." This judgment recited a hearing upon
the petition of Belle Buckley, intervenor, "the an-
swer of George Salisbury, plaintiff," as well as the
"traverse of Mary LaFitte disclaiming any interest
in the matter in controversy," the trial of "the is-
sue in said cause" by a jury, and the verdict of the
jury finding "the issues joined in favor of the plain-
tiff, George Salisbury, and against the intervenor,

Belle Buckley.'' Whereupon the Pueblo county district court found that the note therein described (being the same note described in the complaint in the instant case) ''was the property of Mary LaFitte at the time of the service of the garnishment process herein on the fourteenth day of August, 1903,'' and that the note was in the custody of the clerk of the court. And it was adjudged that said note be turned over to the sheriff of Pueblo county to be sold, ''upon a writ of *venditioni exponas* to be issued out of this court, or upon a special order in pursuance of the judgment and decree herein to be prepared by the clerk of this court;'' and the application of the proceeds of the sale by the sheriff was directed. The defense further alleged that Mary LaFitte mentioned in said judgment is the plaintiff in the instant action, and that the note and deed of trust mentioned is the property sued for herein; that said Mary LaFitte filed a ''traverse'' alleging that she was the agent of Belle Buckley in placing the note and deed of trust in the hands of the public trustee, for foreclosure, and Belle Buckley filed a petition of intervention to the same effect; that, on January 25th, 1903, ''said note and deed of trust was duly sold by the sheriff of Pueblo county, Colorado, to Susan R. Salisbury, at a public sheriff's sale,'' for $590, ''said Susan R. Salisbury being the highest and best bidder at said sale;'' and ''that said sale was duly published'' in a newspaper mentioned, and the sale was ''in strict compliance with the said judgment and according to law;'' and that the sheriff ''acted fairly and honestly, and without any direction from George Salisbury in the sale of said note and deed of trust to said Susan R. Salisbury.'' It

was said at the conclusion of the defense that the judgment was pleaded by the defendants "as a former adjudication of the plaintiff's complaint and the allegations therein contained," etc. Counsel for the appellants do not here insist that the judgment in the garnishment proceedings, as set forth in the fourth defense, was well pleaded as an adjudication of the matters alleged in the complaint in the present action, or, at least, they give no reason why it should be so considered. Certain it is, that the supposed former judgment pleaded, upon its face, adjudicated nothing against the plaintiff in the present action, in contradiction of the claim of right asserted in her complaint. It appears to have been determined by the judgment in question that Belle Buckley was not the owner of the securities, but that the plaintiff in the present action was such owner, at the time of the institution of the garnishment proceedings mentioned, and that the securities mentioned should be sold, upon process for that purpose out of the Pueblo county district court, by the sheriff of the same county. The judgment, as pleaded, was wholly consistent with the allegations of the complaint in this action. The remaining allegations of the fourth defense were either wholly immaterial to the cause of action alleged, or were pure conclusions of law. It is impossible to understand how the allegations of that so-called defense could have constituted a good answer to the complaint. But this is not very important, in view of the subsequent proceedings.

The plaintiff, after a demurrer had been sustained to one replication to defendant's answer, by leave, filed an amended replication, wherein she de-

nied all allegations of new matter contained·in the answer. Afterwards a further pleading was filed, by leave, by the defendants, styled a "supplemental answer and cross-complaint." Learned counsel for appellants do not insist that this particular pleading is of importance in the determination of the cause, and we do not find it necessary to comment on it. Thereafter a further so-called "reply" was filed for the plaintiff, and thereupon the defendant filed a motion *for judgment on the pleadings*. Before proceeding with the further complications of this record, the last mentioned "reply" of the plaintiff requires consideration. Omitting averments of purely legal conclusions contained in that pleading, its effect appears to have been as hereinafter stated. After denying "all averments of fact," it was averred that defendant Salisbury "never recovered any judgment" against the plaintiff, and that "no execution ever issued in his favor against her." The materiality of these averments, either to the cause of action asserted in the complaint, or any defense contained in the answer, is not apparent. It will be remembered that the cause of action, as pleaded in the complaint, was based upon the allegations that the securities in controversy had been levied upon by the sheriff of Pueblo county, under garnishee process, upon execution in favor of Salisbury against the plaintiff LaFitte, and by order of court turned over to the sheriff for sale, and that Salisbury prevented the sale under the order the court had entered, and induced the sheriff to turn the securities over to him, Salisbury, and thereupon converted the same to his own use. It was not averred in the complaint, or in the answer of the defendants,

that the latter claimed any right in the note and deed of trust through an execution sale. The only sale mentioned in the pleadings was the one to Susan R. Salisbury, alleged in the fourth defense of the answer, and it was alleged to have been made pursuant to the judgment of the district court of Pueblo county, in a proceeding to which the plaintiff in this case was a party, and therefore not subject to be collaterally attacked by her. So that the above mentioned averments of the so-called reply were irrelevant to the cause of action pleaded, as well as to any supposed defense of the answer. The ninth and tenth paragraphs of this reply averred that the defendant Salisbury "never in fact became the owner by purchase, assignment or otherwise, of the judgment of Henry Rups against the plaintiff, rendered in the district court of Pueblo county, Colorado, on or about December 21st, 1881, for $2,065, or any judgment of said Rups against her; that said Rups never sold, assigned or disposed of said judgment to said Salisbury or anyone." And it was further alleged that "the alleged and pretended revival of said judgment, January 8th, 1894, was and remains an absolute nullity," for several supposed reasons set forth in the pleading. The last mentioned judgment and alleged revival thereof were not described in the reply except as above stated; and the same had not been mentioned, in any manner, in any prior pleading in the case. The reply did not attempt to connect such judgment and revival with any supposed right of action against the defendants for the conversion of the note and deed of trust, or any defense alleged in the defendants' answer. The purpose of the attack upon what was

designated as the "alleged and pretended revival of said judgment, January 8th, 1894," was left by the pleader wholly to surmise. Besides this, the alleged reasons for attacking the alleged revival of judgment were wholly insufficient for any purpose. The statement that the district court of Pueblo county was without jurisdiction to render the judgment of revival, was a mere conclusion of law, which was not sustained by any allegation of fact, unless it were the further statement in the reply, that "no order to show cause why said judgment should not be revived was ever issued from the court in which said judgment had been rendered, or any other court." This was far from showing that the district court of Pueblo county had not acquired jurisdiction of the person of the defendant, whether by the service of process on her, or by her voluntary appearance, in the proceeding attempted to be assailed by the reply. The presumption is always in favor of the validity of the judicial acts of a court of general jurisdiction, and the burden rests with one, seeking to call in question the jurisdiction of the court in any case, to definitely negative the existence of any fact by which the court might have acquired jurisdiction of the parties affected by its judgment. See *Wilson v. Hawthorne,* 14 Colo., 530; *LaFitte v. Salisbury,* 43 Colo., 248; Freeman on Judgments, secs. 452, 455; *Keely v. East Side Imp. Co.,* 16 Colo. App., 365. Section 243, Mills' Ann. Code, provides that "the defendant may appear and answer the petition in the same manner complaints are required to be answered," etc. The reply of the plaintiff did not attempt to show that she did not so appear and answer a petition for the revival

of the judgment mentioned; and it failed to show want of jurisdiction of the district court of Pueblo county to render the supposed judgment of revival. Without repeating in unnecessary detail the other statements of the reply in supposed impeachment of the alleged judgment of revival, it is enough to say that they amounted to nothing more than an effort to attack the regularity or sufficiency of the proceedings in the district court of Pueblo county, in connection with the revival of judgment, and to suggest defenses against such revival, e. g., the statute of limitations, and want of interest of Salisbury in the judgment revived. It is evident that the alleged judgment of revival could not be collaterally attacked on any of the grounds last mentioned, even if that judgment had been shown by averment to be material to the present action. If judicial precedent were necessary in support of this statement, the authorities will be found to be fully reviewed in *Mortgage Trust Co. v. Redd*, 38 Colo., 458. In the last cited case the court approved the following excerpt taken from Am. & Eng. Enc. Law (2nd ed.), vol. 17, p. 1066:

"In doubtful cases, as the safer course, the courts are inclined to treat defects as errors or irregularities rather than jurisdictional defects."

And the opinion approvingly quoted the language of the supreme court of Wisconsin (in *Tollman v. McCarthy*, 111 Wis., 401):

"No order which a court is empowered, under any circumstances in the course of a proceeding over which it has jurisdiction, to make, can be treated as a nullity merely because it was made improvidently, or in a manner not warranted by law or the previous

state of the case. The only question in such a case is, had the court or tribunal the power, under any circumstances, to make the order or perform the act? If this be answered in the affirmative, then its decision upon those circumstances becomes final and conclusive, until reversed by a direct proceeding for that purpose. In the case before us, it was for the circuit court to determine, in the first instance, when and how the authority with which it was invested to direct a sale, should be exercised; and if, in so doing, it committed error, no matter how egregious, whether in the construction of the statute, or otherwise, still the order was valid until reversed on appeal. It was a mere error or irregularity, which could only be taken advantage of by appeal, but cannot be inquired into in this proceeding.''

But the rule of conclusiveness of the judgments of courts of competent jurisdiction, as applied to a judgment of revival, was definitely settled by the opinion of our supreme court in a case between the appellant Salisbury and the appellee LaFitte, apparently involving the same judgment intended to be designated by the veiled and cautious language of the reply.—*LaFitte v. Salisbury, supra.* The point that the pleading, called a reply, was a departure from the complaint, was not made in the trial court, and will be regarded as having been waived. *Kannaugh v. Quartette Mining Co.,* 16 Colo., 341; *Baldridge v. Leon Lake etc. Co.,* 20 Colo. App., 521. The conclusion, now reached, is that its allegations were immaterial and insufficient in any aspect.

In our opinion, the only material issues presented by the pleadings were those raised by the general denial in the first defense of the answer;

and the burden of proving the allegations of the complaint upon which the liability of the defendants depended, rested with the plaintiff. Without any doubt, the defendants' motion for judgment on the pleadings was ill-chosen; but it did not authorize the rendering of a judgment against them, in accordance with the prayer of the plaintiff's complaint, without proof or confession of facts showing their liability.

3. We quote now from the brief filed by appellants' counsel (who, by the way, did not represent the defendants in the district court):

"When this motion for judgment on the pleadings came on to be heard 'it was stipulated by and between the parties plaintiff and defendant, with the approval of the court, that defendants be allowed to support their motion for judgment on the pleadings by such records as they deemed pertinent, and that the cause be finally submitted thereon for adjudication upon the entire merits, without further trial or hearing, or evidence, and so end and determine the entire controversy and all matters in dispute, touching the note and trust deed mentioned in the complaint.' "

Counsel add: "As we understand it, the action of court and counsel last above referred to, converted the hearing on the motion for judgment on the pleadings into a trial on the merits before the court." It is not easy to understand the precise purport of the stipulation; and the record does not throw much light upon the matter. It appears that upon the hearing had under the stipulation, the *defendants* introduced, as evidence (without objection on the part of the plaintiff), three documentary ex-

hibits. "Exhibit one" was a certified copy of certain proceedings in the district court of Pueblo county, entitled in the case of *George Salisbury, plaintiff, v. Mary LaFitte, defendant*. It contained an order of the district court of Pueblo county, entitled in the case mentioned, granting the motion of the former sheriff of that county for leave to file a substituted return upon the writ of *venditioni exponas* theretofore issued in said cause, "for the purpose of supplying the record, the original writ and return thereon having been lost or destroyed," the order reciting that it appeared to the court that "the return of the said sheriff is in all substantial respects in accordance with the truth." With this order was the motion of the ex-sheriff for leave to make the substituted return, in which he stated that the original return thereon had been lost or destroyed, that the return was the same in substance as the original as to all material matters, and that he accompanied his motion with the amended return "duly verified." The substituted return was attached to what was said in the accompanying affidavits to be a carbon copy of a writ of *venditioni exponas*, issued in the cause, and which was identified with the initials of the clerk of the court. The caption of this purported copy, after stating the venue, stated the title of the cause as follows: "*George Salisbury, plaintiff, v. Mary LaFitte, defendant*. A. T. Stewart, public trustee, garnishee; Belle Buckley, intervenor." It ran in the name of the people, and recited, among other things, the issuing of an execution out of the same court, on August 13th, 1903, on a certain judgment of George Salisbury, plaintiff, against Mary LaFitte, defend-

ant, of date January 8th, 1894, for a mentioned sum and costs, to the sheriff of Pueblo county; the garnishment thereunder of the public trustee of that county, who turned into court, in pursuance of its order, a promissory note and deed of trust (of the same description as set forth in the complaint in the present action); a balance due on an *alias* execution under the judgment recited; and that on December 21st, 1903, judgment was duly entered in said cause in the district court of Pueblo county, in favor of said Salisbury against said LaFitte and said intervenor, adjudging that the said note and trust deed be sold under a writ of *venditioni exponas* in satisfaction of the balance due on the judgment, interest and costs, and accruing costs, besides the sum of forty dollars advanced by the plaintiff to the garnishee. The purported copy concluded with the command to advertise and sell the note and trust deed at public sale for the highest and best price the same would bring in cash in satisfaction of the amount due as the balance of the judgment, besides interest and costs, and the further sum of forty dollars, and to pay to the plaintiff the sums mentioned out of the proceeds of the sale, returning the balance into court; with *teste,* bearing date the fifth day of January, 1904, signed with the initials "L. B. S.," over the words "Clerk of the District Court of Pueblo County, Colorado." The substituted return was signed in the name of the former sheriff, by one calling himself undersheriff, and was verified by the latter, and contained the following statements, in substance: That the person making the return was undersheriff of Pueblo county in the year 1904, and as such received a writ of *venditioni*

*exponas* in the entitled action, issued out of the office of the clerk of the district court of that county, which writ was duly returned by him to the clerk of said court, with his return thereon, and that the same had since been lost or destroyed, as he was informed; that he was able to make a substituted return, in substance the same as the original return as to all material facts; that attached thereto was a carbon copy of the original writ of *venditioni exponas* issued in said cause, "the figures in which and the initials to which were made by the clerk of said court, Hon. L. B. Straight, as shown by the affidavit of J. C. Elwell, attorney for plaintiff, hereto attached and made a part of this return;" that said undersheriff caused a notice of sale of the note described in the annexed copy of the writ to be published (referring to an attached affidavit of the publisher of a weekly newspaper exhibiting the notice of the sale); that at the time and place specified in the attached notice of sale, the undersheriff offered the note and trust deed at public sale, and struck off and sold the same to Susan R. Salisbury, who was the highest and best bidder therefor, for the sum of $590 cash, and as sheriff, assigned and delivered the same to said purchaser; there was also attached to the substituted return the receipt to the sheriff of Salisbury, as execution plaintiff, acknowledging full satisfaction of the judgment, with interest and all costs. The foregoing statement contains all of the substituted return, which is deemed material.

The defendants' second exhibit, offered at this hearing, was a certified copy of the verified petition of Marie LaFitte for a writ of *certiorari*, filed in the

supreme court, and the opinion of the court denying the writ, in the matter of *People ex rel. LaFitte, v. The District Court of Pueblo County,* 33 Colo., 257. This exhibit is of great length, and it would be impossible to attempt to epitomize its contents within any reasonable space. It is virtually repudiated, as evidence, by counsel for the appellants, and nothing has been found in it upon which appellee might rely in support of her judgment. The third and last exhibit of the defendants was the opinion of the supreme court in the case of *LaFitte v. Salisbury,* 43 Colo., 248.

Thereupon the plaintiff offered two exhibits, designated respectively as plaintiff's exhibits A and B. Exhibit A purported to be a copy of a motion filed in case No. 6166, in the supreme court, between Marie LaFitte and Susan R. Salisbury, wherein the defendant in error, Susan R. Salisbury, by her attorney, George Salisbury, moved to dismiss the writ of error, besides purported copies of briefs filed in support of and against the motion. Said cause No. 6166 is now cause No. 3844 on the docket of this court, and exhibits one phase of the perennially recurring litigation between appellee and the Salisburys. We have not been favored with a brief on the part of the appellee, and investigation has failed to discover the materiality of this exhibit to the case in hand. Plaintiff's exhibit B consisted of certified copies from the records of the district court of Pueblo county, as follows: (1) *Alias* execution, issued out of the latter court to the sheriff of that county, in the usual form, upon a judgment for the sum of $3,130 and costs, recovered by George Salisbury, plaintiff, against Mary LaFitte, defendant, on

the eighth day of January, 1894, with what pur-
ports to be the return of the sheriff on that writ.
The purported return, as it appears in the record,
shows no date or signature by the sheriff; and there
is no reference therein to the note and deed of trust
involved in the present action. (2) Copy of judg-
ment docket of the district court of Pueblo county,
containing the following entries, showing a judg-
ment of George Salisbury against Mary LaFitte, of
date January 8th, 1894, as follows:

No. 3785. Judgment Docket (Debtor?) LaFitte,
Mary; Judgment Creditor, Geo. Salisbury. Time of
entry, January 8th, 1894. Revival of judgment in
case No. 1628, *Henry Rups v. Mary LaFitte,* $3,-
130.00; original costs, $65.80; costs, $14.35; execu-
tion, 8-13-03, $1.00. (Also the following receipt of
attorney for George Salisbury): November 12, 1903,
received on execution issued to Larimer county by
sale of real estate bid in by plaintiff, less costs de-
ducted by sheriff of Larimer county, $5,447.12; also
garnishees, $27.91.

As a result of the hearing, as above stated, and
without further evidence, the court gave judgment
against both of the defendants for the amount
claimed in the plaintiff's complaint. The record
does not disclose the slightest evidence tending to
connect the defendant Wildeboor with any of the
proceedings referred to in the exhibits introduced at
the hearing; and it is manifest that the judgment
cannot be sustained, as against him. By the rule,
which has heretofore prevailed in this state, the
judgment, being entire, if reversed for error as to
one of the judgment defendants, must be reversed
also as to the other. *Gargan v. School District,* 4

Colo., 53, 58; *Streeter v. Marshall etc. Co., Id.,* 535.

But it is not believed that the state of the pleadings and proofs warranted the judgment against Salisbury. It appears from the bill of exceptions that the eminent judge of the trial court based his judgment upon the findings that the original judgment of *Rups v. LaFitte* was barred by the statute of limitations, and that no execution was issued on that judgment; and that the attempted revival of that judgment was "a nullity and void," and that the "issuance of execution upon the same" was "a nullity and void." The principle is willingly conceded that one who puts in motion void process, to the injury of another, will be held responsible for the consequences of his act. However, nothing appears in the record to support a finding that any judgment of the district court of Pueblo county, or proceedings thereunder, so far as shown by proof, was a nullity. The legal presumption was in favor of the validity of those proceedings, when collaterally assailed in another court of co-ordinate jurisdiction, if it can be said that they were so assailed, either by pleading or proof. The substituted return, filed by leave of the district court of Pueblo county, in the case entitled *George Salisbury v. Mary LaFitte,* indicated that the note and trust deed had been sold at sheriff's sale, to a stranger to the present action, under a writ of *venditioni exponas* issued out of that court to the sheriff. It must be presumed, the contrary not appearing, that the latter court was in the due exercise of its lawful powers in ordering the filing of the substituted return to the writ of *venditioni exponas,* upon the motion of the sheriff, who executed the writ. Freeman on

Executions, sec. 358; Crocker on Sheriffs, sec. 43; *Anderson v. Sloan,* 1 Colo., 33; *Golden Paper Co. v. Clark,* 3 Colo., 321; *McClure v. Smith,* 14 Colo., 297. As between the parties to this action, the substituted return, if made by due authority, was conclusive as to the statements therein of the acts of the officer in executing the writ. Freeman on Executions (3rd ed.), secs. 61, 364; *Bishop v. Poundstone,* 11 Colo. App., 73, 75; Crocker on Sheriffs, sec. 44.

But if this substituted return were not evidence at all of the regularity and validity of the sale therein set forth, nevertheless there was nothing in it to indicate that the sale of the note and trust deed was made under a void writ, or was not made at all. It carried with it no evidence that the prior proceedings were void or subject to collateral attack. The supreme court had previously decided (43 Colo., 248) that the judgment in favor of appellant Salisbury against appellee, to enforce which the execution (plaintiff's exhibit B) was issued, could not be avoided, in a direct action instituted for that purpose, for alleged error or irregularity in its rendition, or upon the allegation of alleged defenses, which might or should have prevented the entering thereof, unless it were shown that the judgment debtor was prevented, by the fraud or deception of her adversary, from making her defenses, without fault on her part. If there was any defect in the execution, or the return thereof (plaintiff's exhibit B), of which the plaintiff might have availed herself collaterally, she was precluded from taking advantage of the defect, by the allegations of her

complaint, which have been several times re-
ferred to.

Since the judgment of the district court was not
authorized by all the pleadings in the case, together
with the exhibits produced at the hearing, the judg-
ment must be reversed, and the cause remanded for
further proceedings consistent herewith.

*Reversed.*